(No. 26632.— )
OIL, INCORPORATED, Appellant, *vs.* MARY C. MARTIN, Appellee.

*Opinion filed September 21, 1942—Rehearing denied Nov. 11, 1942.*

CARL A. SORLING, and CATRON & HOFFMAN, for appellant.

BROWN, HAY & STEPHENS, (LOGAN HAY, PAUL W. GORDON, and ROBERT W. WILLIAMSON, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Appellant, Oil, Incorporated, filed its complaint in equity in the circuit court of Sangamon county against Mary C. Martin, an attorney at law, to have a constructive trust in a certain mineral deed, title to which was taken by appellee, declared in favor of appellant, and for an accounting of rents and profits. The case is based upon the theory that appellee was attorney for appellant, and the property· in question was acquired at the direction of appellant by appellee and title taken in the latter's name, and that thereby a constructive trust arose. The circuit court found in favor of appellee and entered a decree dismissing the complaint because appellant had not maintained the burden of proof in establishing the allegations contained therein. A freehold is involved, permitting a direct appeal to this· court. *Triger* v. *Carter Oil Co.* 372 Ill. 182.

The property involved originally belonged to Charles L. Wood and had been conveyed by him to the First State Bank of Beecher City, Illinois, and the latter had made an oil and gas lease to the Carter Oil Company. Wood claimed the deed conveying the property was in fact a mortgage, and that said bank had no power to execute an oil and gas lease, and litigation was pending between Wood and the bank and the Carter Oil Company to determine this question. Oil, Incorporated, through C. Hayden Davis, as president, knew of this situation and desired to obtain a top lease from Wood, which would become effective in case the latter was successful in having the court hold his conveyance was in fact a mortgage. At this time the officers of Oil, Incorporated, were interested in an oil lease in other land owned by Wood and were engaged in litigation with the Carter Oil Company concerning it.

The theory of appellant is that it employed appellee as an attorney at law to procure for it such top lease in her name, and such event would aid in the Wood suit between the bank and the Carter Oil Company, and if successful would establish its top lease for oil and gas, and that for such services appellee was to have her expenses paid and to receive a share in such oil and gas lease. The claim of appellee is that she made a contract directly with Wood to represent him as attorney, and that such top lease if upheld was, by her agreement with Wood, to be her attorney fee, and that the moneys expended by appellant were for the protection of its interest in the other Wood lease, and, further, that if the contract claimed by appellant was made with Wood through appellee it was champertous and void, thus barring appellant from any relief.

The important and critical fact to be determined under these issues, and one not decided by the trial court, is whether the relation of attorney and client existed between the parties before and during the negotiations for the oil

and gas lease from Wood to Mary C. Martin. This is important upon the question of burden of proof, for if the relation of attorney and client exists and the attorney receives anything of benefit thereby, contrary to the interests of the client, either by purchase from the client or by acquiring interests adverse to the client, the burden is upon the attorney to show the fairness, adequacy and equity of such transaction. (*Jennings* v. *McConnel,* 17 Ill. 148; *Ross* v. *Payson,* 160 id. 349; *Willin* v. *Burdette,* 172 id. 117; *Masterson* v. *Wall,* 365 id. 102.) The circuit court proceeded upon the theory that the interest in the property was obtained by appellee as a fee by contract with Wood, but did not determine whether the acquisition of this property was a purpose for which appellee had been employed as attorney.

The facts in this respect show that Davis and Harry McQuigg were interested in an oil lease on other land owned by Wood, which was in litigation. There was also pending the litigation above mentioned concerning the property here involved. In August, 1938, at the request of Davis appellee went to St. Elmo, Illinois, to consider opening a law office there. On this trip he consulted her about getting an oil lease from some people by the name of Logue, which she procured for him. She was then consulted by Davis and others connected with Oil, Incorporated, about a Maxfield lease, and later she went to St. Elmo and procured the signatures to an oil and gas lease from some people by the name of Tucker. She received her expenses for these transactions, and in the Maxfield matter received a fee of $200 from another person who had a contract with Oil, Incorporated. However, it was decided these properties would not be profitable for development, and then Davis suggested that appellee try to get the top lease on the Wood property. She was taken to the home of Wood by McQuigg, and the oil and gas lease was made and delivered to her in November, 1938. The litigation between

Charles L. Wood and the First State Bank of Beecher City and the Carter Oil Company progressed until May, 1940, when the matter was compromised by the lease to Mary C. Martin being surrendered and a mineral deed made by Wood and wife to Mary C. Martin for the part of the land he obtained in settlement, the remainder being retained by the bank and the Carter Oil Company. Thus the mineral deed for a part of the property, by a compromise and settlement, was substituted for the top lease covering the oil on the premises.

While the Maxfield matter was in progress a contract was prepared between appellee, on the identical terms with the contract she made with Wood, which was submitted to Davis and approved by him. When the lease was obtained from Charles L. Wood in November, 1938, it was without value, unless Wood succeeded in getting the deed to the bank declared a mortgage, and the lease given to the Carter Oil Company removed as a cloud. The litigation concerning this matter proceeded until it was settled in May, 1940. The records show without dispute that from February, 1939, until June, 1940, appellee rendered regular bills to appellant for expenses as attorney in the suit of Carter Oil Company v. Wood, and certified the amounts stated in such bills had been expenses incurred in the service to Oil, Incorporated. These bills so certified by her and paid amounted to $500.87. During this same period and on account of this same litigation appellant paid $1500 to other attorneys for assisting appellee in the conduct of the suit, or in settling it. These attorneys were employed by Oil, Incorporated, and no objection was voiced by appellee in having counsel selected by appellant handle the matter which appellee now claims belonged exclusively to her.

During this period of time she constantly advised with Davis by mail upon the progress of the litigation, and May 27, 1940, wired him a settlement had been made in accordance with an agreement made between him and the

president of the bank. Davis testified appellee was to work on a contingent basis, and if successful was to receive a one-sixteenth interest in whatever recovery was had in the Wood property. While appellee denies she was paid for services rendered in the other matters before she obtained the Wood lease, the proof shows she received her expenses, and no contention is made that she could not have recovered the reasonable value of such services if a demand or claim had been made.

Considering all of the facts appearing in the record, the conclusion is irresistible appellee was acting as attorney for Davis, or Oil, Incorporated, as early as August, 1938, and rendered legal services in at least three matters in which they were interested, and through him and his associates she was brought into contact with Wood, and obtained in her own name the property involved in this suit. Oil, Incorporated, was in the business of producing oil and gas, a fact well known to appellee. Appellee was a young and inexperienced attorney who rendered services in all these matters solely through the influence and suggestion of the officers of appellant. Nowhere in the evidence does she contend the relation of attorney and client, existing in August and September, 1938, was terminated, but claims that in November, 1938, a transaction handled in the same manner as the Maxfield lease, became her own exclusive property, with all expenses of travel, hotels and incidentals, together with the services of additional attorneys, borne by appellant.

There can be no doubt but that the relation of attorney and client existed between appellant and appellee at the inception of the Wood transaction. Such being the fact, the whole basis of the decree of the trial court falls, for the complaint was dismissed because the plaintiff did not maintain the allegations made therein; whereas, in such cases where the attorney deals in a manner adverse to the interests of his client, and that fact is shown, the burden of

proof falls upon the attorney to show the property acquired from the client, or acquired adverse to the interests of the client, does not constructively belong to the latter.

The evidence on the part of the plaintiff tends to show appellee was to receive for her services as attorney, if the Wood lease was obtained and made effective, a one-sixteenth interest in the same. Appellee does not deny such a conversation was held with Davis, but contents herself with denying she made any arrangement with him about the lawsuit. On at least two occasions appellee stated to others that she did not in fact own the lease, but only had an interest in it by way of attorney fees. McQuigg also testifies that appellee said she would have to secure the approval of Davis to the settlement, and she was present when he told Wood the lease would be developed by Oil, Incorporated, and would be its property, and this does not appear to be disputed by her.

The correspondence between appellee and Davis shows she reported the progress of the Wood suit, and that the settlement resulting in the mineral deed was in fact made through negotiations between Davis and the president of the First State Bank of Beecher City. The fact appellant paid the expenses of appellee upon her certificates as an attorney, and also paid additional lawyers to assist her in the litigation, with no other explanation than that it would be beneficial to appellant to have the good will of Wood until other litigation of the Carter Oil Company was terminated is not convincing. There is ample evidence in the record to show appellee was encouraged to acquire the interest in question, and for her compensation would receive a share of what was recovered. The burden of proof was upon appellee, as pointed out above, to show the fairness of the transaction.

Under such circumstances when appellee took title to the lease in question, and later to the mineral deed, it was adverse to the interests of appellant, who knew of the prop-

erty and who procured her to negotiate for it, and expected later to develop it. The rule is settled that a lawyer cannot purchase or acquire the subject matter of litigation, or any interest therein, and hold the title adversely to the client. (*Sutherland* v. *Reeve,* 151 Ill. 384; *Gibbons* v. *Hoag,* 95 id. 45.) In the *Sutherland·case* it is said: "if defendant, while acting as Reeve's solicitor, derived knowledge of the McMullen claim * * * it needs no citation of authority to show that a solicitor cannot secretly purchase the subject-matter in litigation, or any interest therein, and hold it adversely to his client." It was also held in that case that if the attorney does so purchase he will be held as a trustee for his client as to the property, or the interest so purchased, for the reason the purchase of the subject matter of the litigation is forbidden as against public policy, and because it places the solicitor under temptation to be unfaithful to his trust. Under the facts in the present case not only has the appellee failed to sustain the burden of the proof, but the evidence clearly shows that appellee was attorney for appellant, and acquired an interest in real estate adverse to the interests of her client, while sustaining such relation.

Appellee claims we are bound by the findings of the trial court upon questions of fact, but that has no application to the present case, because the trial court did not determine and consider whether the relation of attorney and client existed, and thereby determine upon whom to lay the burden of proof. From the terms of the decree it is apparent the trial court assumed the burden of proof was upon the plaintiff, but when the evidence, as is clearly shown by the facts, discloses appellee was at the inception of the transaction the attorney for appellant, the burden was upon her to establish the justice, equity and fairness of the transaction, and not upon appellant.

Appellee also claims no relief may be granted to appellant because the contract as testified to by appellant's wit-

nesses would have been champertous. The rule sought to be applied by appellee may only be invoked by the parties to the agreement. It does not apply to the rights of other parties. In *Henderson* v. *Kibbie,* 211 Ill. 556, we said: "It is the rule in Illinois, and also, as we believe, the general rule, that the defense of champerty can only be interposed in an action between the parties to the champertous contract, and does not furnish any reason for refusing relief in the proceeding to which the champertous agreement relates. (*Torrence* v. *Shedd,* 112 Ill. 466; *Gage* v. *DuPuy,* 137 id. 652; *Burton* v. *Perry,* 146 id. 71.)" The cases cited by appellee are not controlling, because in each instance the defense of champerty was asserted by the party with whom the champertous contract had been made, or by his grantee.

Without assuming the agreement of appellants through their attorney with Wood was champertous, yet if it could be so construed, under the authorities the one entitled to assert the invalidity of the contract for that reason would be Charles L. Wood, and not some one collaterally interested therein. Under the evidence in this case the appellee acquired the mineral lease as trustee for appellant. Under the circumstances, if there was a tinge of illegality in the arrangements between Oil, Incorporated, and Charles L. Wood out of which appellee was to receive a beneficial interest, she could not, in case she acquired the whole interest thereby, prevent a recovery and an accounting by her employer or associate.

The rule has been laid down and followed that a partner, or one occupying a position of trust and confidence, may not by reason of the fact that money may have been earned out of an illegal transaction, be released from making an accounting for his associate's share, when all of the proceeds have fallen into his hands. (*Brooks* v. *Martin,* 69 U. S. 70, 17 L. ed. 732.) The court there points out there is a

difference between enforcing an illegal contract and asserting title to money which has arisen from it. This case has been followed many times, and the principle recognized in *Groome* v. *Freyn Engineering Co.* 374 Ill. 113; *Central Republic Trust Co.* v. *Evans,* 378 id. 58. It certainly would be highly inequitable for the agent and attorney of a client to retain all of the proceeds of a contract made through the attorney with a third party, even though it be champertous in its nature, when the only party entitled to assert the illegality of the contract is such third party. Not only would such a rule encourage attorneys to conceal from clients the illegal nature of contracts, but would by a false application of the principles of equity enable them to benefit therefrom. As was said by Judge Scholfield in *Gibbons* v. *Hoag, supra,* "Such a practice would open a door to endless wrongs and villanies, and bring great and just reproach upon the profession."

We are of the opinion the evidence shows appellee, while attorney for appellant, obtained title to the mineral rights in question, and that she holds it as constructive trustee for appellant, subject to the share she was to receive as compensation for her services. There has been no determination of this question. The decree of the circuit court is reversed and remanded with directions to ascertain this interest, and upon such determination order a conveyance to appellant of all the mineral interest involved, except such part, if any, agreed to be given appellee for services as attorney, and to otherwise proceed in a manner not inconsistent with the views herein expressed.

*Reversed and remanded, with directions.*