(No. 27977.—

WILLIAM S. VROOMAN, Appellant, *vs.* E. J. HAWBAKER, Appellee.

*Opinion filed September 19, 1944.*

Dwight H. Doss, of Monticello, for appellant.

E. J. Hawbaker, of Monticello, *pro se,* appellee.

Mr. Justice Wilson delivered the opinion of the court:

February 6, 1943, the plaintiff, William S. Vrooman, filed his complaint in the circuit court of Piatt county against the defendant, E. J. Hawbaker, an attorney at law, seeking an accounting, a declaration of trust in, and a reconveyance of, certain farm land, title to which was obtained by defendant, July 31, 1941, by sheriff's deed. A motion to strike the complaint was allowed. Plaintiff elected to abide by his pleading, and judgment in bar of action and for costs was entered in favor of defendant. An appeal, prosecuted to the Appellate Court for the Third District, was properly transferred to this court, a freehold being involved. *Giese* v. *Terry,* 382 Ill. 34; *Papa* v. *Papa,* 377 Ill. 316.

From the relevant, well-pleaded, though somewhat verbose, allegations of the complaint, admitted to be true on a motion to dismiss, (*Scully* v. *Hallihan,* 365 Ill. 185,) it appears that plaintiff, seventy-three years of age, is a farmer of limited education, with practically no business experience, and particularly without experience as to matters of law; that, in 1916, upon the death of his father, he became life tenant of 142 acres of land in Piatt county, subject to an annuity of $400, payable to Maggie S. Buchanan, his sister, the remainder in fee being devised to his five children or their descendants; that defendant, a lawyer in Monticello for more than twenty years, on several occasions undertook to represent plaintiff, his wife and daughters, and that he, defendant, became the owner of record not only of plaintiff's life interest, constituting the

subject matter of litigation, but also of the remainder interests of three of plaintiff's daughters. Acquisition of plaintiff's property by defendant, while acting in the capacity of his attorney, it is charged, constituted a violation of a fiduciary relation alleged to exist between the parties.

The complaint alleges that on December 28, 1931, in cause No. 2773, an action instituted in the circuit court of Piatt county against plaintiff by Maggie S. Buchanan, defendant was appointed guardian *ad litem* for, and filed answers on behalf of, two of plaintiff's minor daughters; that, in this proceeding, and subsequently, defendant acquired knowledge of the provisions of plaintiff's father's will and of the contingent interests in the property devised to plaintiff's daughters; that, on October 7, 1932, plaintiff became indebted to the First National Bank of Bement upon a promissory note in the amount of $2,531.52, executed by himself, his wife, and three of his daughters; that on September 9, 1933, after default in payment of the note, judgment by confession, in cause No. 5066 in the circuit court of Piatt county, was entered in favor of the bank and against plaintiff, his wife and one of his daughters, for the sum of $2948.08 and costs, and that execution on this judgment was returned, unsatisfied, by the sheriff, January 9, 1939. Plaintiff's complaint also discloses that on January 9 and 13, 1939, respectively, judgments against plaintiff and his wife were entered by the circuit court of Piatt county in favor of Lilly and Bryant Sprague for $1914.44, and costs, and in favor of D. E. Godfrey for $343.56, and costs, executions on these judgments being subsequently issued.

It is further alleged that on or about February 16, 1939, in supplementary proceedings in cause No. 2773, objections were interposed to the appointment of F. L. Borton as receiver, and that defendant appeared in court and represented plaintiff and his daughters as their at-

torney; that, on this date, plaintiff consulted defendant with respect to the legal effect of any lien arising out of the judgment in cause No. 5066 and a possible sale under this judgment of his life estate; that he, plaintiff, thereupon engaged defendant "to look after the legal interest of said plaintiff in the premises;" that defendant stated, in substance, he would undertake so to do, and that "he (plaintiff) thereupon placed and trusted all of his interest in the premises into the hands of Hawbaker to thus be protected and safeguarded by him, Hawbaker, as his attorney."

The complaint charges that on October 20 and December 28, 1939, defendant obtained deeds, subsequently recorded, from plaintiff's daughters, Evelyn Anna Vrooman Hutson and Sylvia Keeling, respectively, and, also, that a deed was executed conveying the interest of Margaret Vrooman Cole to Carl I. Glasgow, who, in turn, plaintiff states he is advised and so alleges, has conveyed to defendant.

Additional allegations are that on January 3, 1940, without plaintiff's knowledge or consent, defendant, for a consideration of $1600, became the owner, by assignment, of the judgment in cause No. 5066; that he thereafter caused a *pluries* execution to be placed in the sheriff's hands for service and sale of plaintiff's life interest, and caused notices of the sale to be posted in the city of Monticello and published in a Hammond, Illinois, newspaper, to take place April 27, 1940, at ten o'clock, A. M., in Monticello; that, within ten days after service of the execution, he again consulted defendant with respect to his personal property and homestead exemption rights; that, in accordance with defendant's promise to this effect, his homestead interest was subsequently set off, and none of his personal property was included in the sale. Next is alleged, in turn, the sheriff's sale under the execution,

to defendant, for $1400, the sheriff's return of the sale, the lapse of fifteen months, without redemption, and, subsequently, on July 31, 1941, delivery to defendant of a sheriff's deed, recorded August 2, 1941.

The complaint charges that by his purchase of the judgment in cause No. 5066, while acting as plaintiff's attorney, defendant became the owner in trust for plaintiff's use and benefit, (subject to defendant's equitable right to have repaid lawful amounts actually expended by him, together with reasonable attorney's fees to which he may be entitled,) of this judgment; of $1200 received by defendant from the sale of 1628 bushels of corn turned over to him on March 6, 1942; of $2000 received for 1942 crops; of $50 for pasture rental, and $590.67, received June 30, 1942, by defendant from F. L. Borton, receiver, representing the proceeds accruing to plaintiff's life-estate interest. The complaint also charges that, upon rendition of the judgments in favor of Lilly and Bryant Sprague and Godfrey, a duty devolved upon defendant, as plaintiff's attorney, to attempt to satisfy them by offering a small percentage of their value, funds for which purpose, it is stated, could have been obtained by mortgaging the land; that, if unsuccessful in thus effecting a compromise of these judgments, it was then incumbent upon defendant, as plaintiff's attorney, to institute voluntary proceedings in bankruptcy in his behalf; that a sale in bankruptcy would have brought no higher bid for plaintiff's life estate than defendant's successful bid for the same property at the judgment execution sale later held, and that defendant's failure to proceed, as outlined, was wrongful, resulting in great financial damage to plaintiff.

Finally, plaintiff seeks an accounting of all rents, issues and profits since the date of the sheriff's deed, after allowing credit for all payments lawfully made by defendant for taxes, improvements and other expenses and the entry of a decree in his favor (1) for any balance found to be

due, (2) declaring all right, title and interest of defendant, under the sheriff's deed, to be held by him in trust for plaintiff's use and benefit, and (3) requiring defendant and his wife forthwith to make, execute and deliver to plaintiff a good and sufficient deed, conveying all interest in the life estate, or, upon his failure so to do, appointment of some competent person to execute a good and sufficient deed for this purpose.

Among the reasons advanced in support of his motion to dismiss, defendant urges that the junior judgment creditors (Lilly and Bryant Sprague and Godfrey) neither redeemed nor offered to redeem from the sheriff's sale, that they, and not plaintiff, would be the real beneficiaries if the relief sought is granted, and that the complaint savors strongly of collusion between the judgment creditors and plaintiff. Also averred is the claim that the decree and judgment in causes Nos. 2773 and 5066, not having been appealed by plaintiff, were *res judicata* of the present action. Of twenty-two grounds included in defendant's motion to dismiss in the trial court, the sole contention requiring consideration here is his claim that the complaint fails to state a cause of action. Defendant admits acting, in 1932, in cause No. 2773, as guardian *ad litem* for two of the plaintiff's children. He maintains that the interests of these children were antagonistic to their father, and that no confidential relation arose out of the services then performed. Defendant directs attention to a decree, entered April 4, 1932, by the circuit court, in cause No. 2773, finding that plaintiff, as life tenant, had not properly maintained the premises; that he had committed waste and was indebted to Maggie S. Buchanan in the sum of $1400 for annuity payments, and that he allowed Mrs. T. W. Doss to purchase the real estate at a sale for taxes, and failed to redeem from this sale. By the decree, the court appointed a receiver to have custody of the premises, redeem from the sale for taxes, pay the annuity

and preserve the property. Defendant also admits that the law firm of Hawbaker and Sievers represented plaintiff and some of his children in supplementary proceedings in cause No. 2773, by preparing and presenting in court a petition seeking the appointment of Elmer Haynes, as receiver, to succeed Joseph Bodman, deceased. He states that this petition was denied, the court, on February 16, 1939, having apopinted F. L. Borton as receiver. Defendant makes the contention, among others, that this last-named retainer, constituting the only instance of his employment by plaintiff, created no enduring relationship of attorney and client, that it was for the specific object described, and that this purpose had been discharged prior to the issuance of the execution against plaintiff. He further urges that the complaint conclusively demonstrates that plaintiff knew, when this execution was served, the relationship between him and defendant was antagonistic, and that the real estate was being sold at defendant's request. No confidential relationship having been disclosed between the parties, it is maintained that no abuse of any such relationship could exist.

The defenses thus presented are in their nature factual, rather than legal, and, as such, to be available to defendant, must be set forth in an answer to plaintiff's pleading. The theory of the present complaint is the asserted abuse by defendant of the confidential relation of attorney and client alleged to have existed between the parties, the failure of defendant to impartially represent plaintiff, and the claimed enrichment of defendant during the existence of the relationship by acquiring, without plaintiff's knowledge or consent, title to the subject matter of litigation. The relation of attorney and client, being of a highly confidential nature, constitutes a sufficient basis from which the existence of a fiduciary relationship between the parties may be assumed. (*Masterson*

v. *Wall*, 365 Ill. 102.) Where this relation of attorney and client exists and the attorney receives anything of benefit thereby, either by purchase from the client or by acquiring interests contrary to the interests of his client, the burden of proof rests upon the attorney to show the fairness of the transaction, that it was equitable and just, that it did not proceed from undue influence, and that the property so acquired does not belong constructively to the client. (*Oil, Inc.* v. *Martin*, 381 Ill. 11; *Masterson* v. *Wall*, 365 Ill. 102.) In short, a lawyer cannot purchase or acquire the subject matter of litigation, or any interest therein, and hold title adversely to the client. (*Oil, Inc.* v. *Martin*, 381 Ill. 11.) If the attorney does so purchase, he will be deemed a trustee for his client as to the property, or the interest so purchased, for the reason the purchase of the subject matter of the litigation is forbidden as against public policy, and because it places the attorney under temptation to be unfaithful to his trust. (*Oil, Inc.* v. *Martin*, 381 Ill. 11; *Sutherland* v. *Reeve*, 151 Ill. 384.) Again, one occupying a fiduciary relation, who deals with the subject matter of the relationship and thereby gains an advantage to himself, will be deemed guilty of fraud, either actual or constructive, depending upon his intent and purpose. To prevent the perpetration of wrong, the courts will, by construction, raise a trust converting the holder of a legal title into a trustee, and enter such orders as may be necessary to protect the rights of the wronged or defrauded party. *Giese* v. *Terry*, 382 Ill. 34.

In the light of these authorities, the decisive issue presented is whether, according to the well-pleaded allegations of the complaint, a confidential relationship existed between the parties. From a consideration of the complaint, and particularly its allegations, already recounted, with respect to the recital of events occuring on February 16, 1939, there is sufficiently pleaded, as a fact, the re-

436

lation of attorney and client between the parties. This being so, a fiduciary relationship is properly charged. If the proof sustains this charge of the existence of a relationship of trust and confidence between plaintiff and defendant, the burden of proof then devolves upon the latter to prove the justice, equity and fairness of the transaction assailed by showing that he did not purchase the subject matter of litigation, and, hence, did not hold title adversely to plaintiff. *Oil, Inc.* v. *Martin,* 381 Ill. 11.

The decree of the circuit court is reversed and the cause remanded, with directions to overrule the motion of defendant to strike the complaint.

*Reversed and remanded, with directions.*