415 P.2d 910

**TUAB MINERAL CORPORATION, an Arizona corporation, and John W. Bibb, Jr., Appellants,**

v.

**Guy ANDERSON and Jane Doe Anderson, husband and wife, and Alf B. Claridge and Jane Doe Claridge, husband and wife, Appellees.\***

**2 CA–CIV 78.**

Court of Appeals of Arizona.

June 27, 1966.

Rehearing Denied Sept. 8, 1966.

\* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 8117. The matter was referred to this court pursuant to A.R.S. Section 12–120.23.

513

Chandler, Tullar, Udall & Richmond, by Thomas Chandler, Tucson, Struckmeyer & Whitney, Sandor O. Shuch, Phoenix, for appellants.

Jennings, Strouss, Salmon & Trask, by Ozell M. Trask, Phoenix, for appellees.

HATHAWAY, Judge.

Tuab Mineral Corporation, an Arizona corporation, has appealed from a judgment in favor of appellees and from the denial of its motion for a new trial. John W. Bibb, Jr., president of the appellant corporation, although designated an appellant in the notice of appeal, asserted no claim for relief either in the proceedings below or on appeal.

Tuab Mineral Corporation filed an action in superior court in Graham County to impress a constructive trust in its favor upon mining claims purchased by appellees, Guy Anderson and Alf Claridge. The claims, which had been owned by the appellant, had been mortgaged by it and the mortgage had been foreclosed. On the final day of the redemption period, Anderson, an attorney, and Claridge jointly offered to purchase the property from the purchaser on foreclosure (the mortagee, Utex, a Utah

**514**

corporation). Six days later the offer was accepted and title to the property was conveyed to appellees. The appellant's complaint was premised upon the theory that its right to redeem the property had been exercised by appellees and since Anderson allegedly was or had been an attorney for the Tuab Mineral Corporation, he could not acquire such an interest in the mining claims and his attempt to do so subjected the claims to the impression of a constructive trust. Claridge was included in the lawsuit because he was Anderson's partner in the purchase. The complaint sought a reconveyance of the claims to the appellant. The case was tried to the court, sitting without a jury, and findings of fact and conclusions of law were filed by the court.

The appellant contends that on the last day of the mortgage redemption period it was still Anderson's client with respect to a matter involving its mining claims. It objected to their sale by Utex to the alleged partnership of Anderson and Claridge, claiming that it could and did repudiate the sale, or, if it could not do so, Anderson had the burden of proving by the "most satisfactory evidence" that the transaction was entirely fair and just to the appellant.

The assignments of error are directed principally to various of the court's findings of facts and conclusions of law. This court can set aside the findings of fact only if they are clearly erroneous. 16 A.R.S. Rules of Civil Procedure, Rule 52 (a). But even if supported by evidence, we can set the findings aside if definitely and firmly convinced, on the basis of the entire evidence, that a mistake has been committed. Merryweather v. Pendleton, 91 Ariz. 334, 372 P.2d 335 (1962). A finding of fact induced by an erroneous view of the law is itself clearly erroneous, Merryweather v. Pendleton, supra, and there is no limitation on this court's review of the trial court's statement of its conclusions of law. 2B Barron and Holtzoff, Federal Practice and Procedure § 1137 (Rules ed.

Wright 1961); 5 Moore's Federal Practice § 52.03(2) (2d ed. 1951).

Though the facts are involved, we deem it necessary to state them in some detail to lend clarity to the transactions and relationship of the parties.

Tuab Mineral Corporation had granted Bear Creek Mining Company a 44-month option to purchase for $2,100,000 its 70 patented and unpatented mining claims in the Lone Star Mining District in the Safford area of Graham County, Arizona. During the first 18 months of the option period, which commenced in July 1957, Bear Creek Mining Company was to make monthly rental payments of $2,750, to be credited to the purchase price, and during the remaining 26 months the installment payments were to be $1,750. On exercise of the option, the unpaid balance of the purchase price was to be paid in cash. Bear Creek Mining Company could cancel the agreement, effective at the end of any month, after which its obligation to make further payments would cease, and it subsequently terminated the agreement at the end of 1958.

Tuab Mineral Corporation settled a lawsuit filed against it in January 1958 by Utex by giving Utex its five-year installment promissory note secured by a realty mortgage on its mining claims. Monthly payments of $750 each which Tuab Mineral Corporation had been making to Utex out of the payments it had been receiving from Bear Creek Mining Company were discontinued after termination of the Bear Creek option-to-purchase agreement.

Controversies between Tuab Mineral Corporation and the estate of Hymen D. Goldberg, who had been its secretary, counsel and a shareholder, had culminated in September 1958 in a lawsuit in which Tuab Mineral Corporation sought to quiet its title to the mining claims as to any claims of the Goldberg estate and to cancel the estate's certificates of Tuab Mineral Corporation's stock; the Goldberg estate had counterclaimed for monies owed by the appellant to Goldberg.

In April 1958, Tuab Mineral Corporation had assigned three and one-half per cent of its interest in the July 1957 option-to-purchase agreement with Bear Creek Mining Company to James A. Murphy of Tucson and to Charles M. Smith of Safford, respectively, as compensation for past and future legal services relating to the Bear Creek Mining Company matter, the Utex litigation and the Goldberg estate dispute. Following the termination of the Bear Creek agreement, Murphy and Smith's compensation had ceased. In June, 1959, Utex commenced an action to foreclose its mortgage on the mining claims as Tuab Mineral Corporation was in default in making payments on its note.

In the instant case, testimony was presented on behalf of the appellees for the purpose of showing that an attorney-client relationship did not exist between Tuab Mineral Corporation and Anderson with respect to the Utex mortgage foreclosure action. The testimony was to the effect that John Bibb, Jr., the appellant's president, consulted Smith about filing an answer in the action. Smith, who was then practicing law in partnership with Anderson, told Bibb he was contemplating giving up the practice of law and suggested that Bibb talk to attorney Murphy about the possibility of requesting Utex's attorney to agree to a reduction in the amount of the claim.

Bibb also consulted Anderson who told him he would not defend the action and suggested, as Smith had done, that possibly the amount of the judgment being sought might be contested. Anderson also told Bibb "to go to another lawyer." Bibb testified that he understood that Anderson would act as appellant's attorney in the foreclosure action, but he also testified that Anderson had said appellant could do nothing about the lawsuit, that it owed the money Utex was suing for and should pay the debt. Thereafter, Bibb's personal attorney telephoned Utex's attorney in relation to the foreclosure suit.

In the spring of 1957 appellant requested Smith to represent it and handle its legal affairs personally, even though Smith had said that the partnership, of which Anderson was the other member, would have the retainer. Murphy thereafter had also represented the appellant. Smith performed the work under the partnership retainer. He withdrew from the partnership in September 1959 and told the appellant that it could have either Anderson or some other attorney replace him. The only compensation that either Smith or his firm had received from the appellant was under the 1958 assignment of a part of the Bear Creek payments.

The trial court stated in its findings of fact that in 1958 Tuab Mineral Corporation had employed Smith to handle its legal affairs, that he had done so as a member of the firm of Anderson and Smith until his retirement in September 1959 and that he could not represent Tuab Mineral Corporation "apart from and aside from the obligation of the firm of Anderson and Smith." The trial court also found "[t]hat after September, 1959 * * * Anderson was legally obligated as a partner under the agreement * * * but only insofar as the particular obligation of said agreement."

The meaning of this latter finding, the appellant argues, is that although Anderson did not represent it in Utex's foreclosure action (as also found by the trial court) his attorney-client relationship obligations continued. Anderson's interpretation is that this finding means that the employment agreement between the firm of Anderson and Smith and Tuab Mineral Corporation did not require him as the firm's successor to defend the Utex foreclosure action.

During the redemption period Bibb sought funds to pay Tuab Mineral Corporation's indebtedness to Utex. He made various proposals to Anderson, Claridge and others for their providing the needed financing. Anderson rejected the propos-

als because none would have eliminated the Goldberg estate's claims.

After Bibb had failed in his final attempts to redeem the claims on the last day of the redemption period, one of the partners in the law firm which represented Utex in Arizona indicated to Anderson and Claridge that they could obtain title to the mining claims free of any encumbrances and liens, including whatever rights the Goldberg estate might have in the property, by a conveyance to them after expiration of the redemption period.

■ Since the effect of the expiration would be to clear the title to the claims, Anderson and Claridge each gave Utex's attorney his check for the amount Utex would have been entitled to receive had the claims been redeemed as a joint offer to purchase the title Utex would acquire following the redemption period. Utex accepted the offer by transferring title to Anderson and Claridge after expiration of the redemption period. Appellant challenges the court's finding that on the last day of the redemption period Anderson and Claridge "each offered to purchase an undivided one-half interest in the mining claims provided * * * Utex * * * would convey good title." We find no error.

The trial court found "[t]hat the value of the mining claims at the time of the sale was not in excess of the cost of such claims to the defendants" (Anderson and Claridge), i. e., approximately $48,500, consisting of approximately $41,230 as the principal of the mortgage debt and $7,270 as the total of the accrued interest thereon, attorneys' fees and costs. Tuab Mineral Corporation has assigned this finding as error.

■ Prior to the $2,100,000 option to purchase, which Bear Creek had failed to exercise, Rare Metals Corporation of America had had an option to purchase for $3,000,000, which it had dropped when a ninety-day, no-rent period for exploratory work and ore extraction for sampling and testing had ended. A mining exploration geologist expressed the opinion that Tuab Mineral Corporation's claims had no value to his employer, Bear Creek, but might have value either as real estate or for speculation. In the period of about fifteen months between Bear Creek's withdrawal and the expiration of the mortgage redemption period all of Bibb's numerous efforts to obtain new financing or to interest possible purchasers or lessees had failed. Testimony that the claims had a greater value than that determined by the trial court was conjecture. The finding as to value therefore was not clearly erroneous.

The fact that Anderson did not represent Tuab Mineral Corporation in the foreclosure action does not necessarily mean that an attorney-client relationship between Anderson and Tuab did not continue beyond the commencement of the foreclosure action. Smith expressed the opinion that Tuab Mineral Corporation's lawsuit against the Goldberg estate "died a natural death" because when Utex had foreclosed its mortgage, the subject matter of the litigation has ceased to exist.

Actually, Anderson's obligation as one of Tuab Mineral Corporation's attorneys in the Goldberg estate litigation continued until the expiration of the redemption period. Had his purchase of Utex's title to Tuab Mineral Corporation's claims occurred prior to the expiration of the redemption period, rather than subsequent to it, there might be some reason for urging that he held the claims for Tuab Mineral Corporation's use and benefit on the theory that "there has been an abuse of the confidential relation by which the attorney would benefit and the client would suffer loss if the transaction was allowed to stand as made." Harrison v. Murphey, 39 Okl. 548, 135 P. 1137, 1139, 49 L.R.A.,N.S., 1059 (1913). This was not Anderson's situation.

■ Unless the attorney would benefit and the client would suffer a loss if the transaction were allowed to stand, the attorney-client confidential relationship is not considered to have been abused. Kauder v. Lautman, 114 N.J.Eq. 197, 168 A. 660, 662

(1933). Thus, as stated in the court's syllabus in Kauder v. Lautman, supra:

"[a]fter the relation of attorney and client ends the attorney may purchase at a judicial sale property in which his former client was interested, provided he does not use for his own advantage, and to the prejudice of such client, information acquired in his professional employment. * * * "

He may make a good faith purchase from a third person of a title which has previously belonged to the client. 7 C.J.S. Attorney and Client § 126, at p. 962 (1937); Harrison v. Murphey, supra.

The following statement from Vrooman v. Hawbaker, 387 Ill. 428, 56 N.E.2d 623 (1944), explains the circumstances in which a constructive trust arises out of an attorney-client relationship.

"Where this relation of attorney and client exists and the attorney receives anything of benefit thereby, either by purchase from the client or by acquiring interests contrary to the interests of his client, the burden of proof rests upon the attorney to show the fairness of the transaction, that it was equitable and just, that it did not proceed from undue influence, and that the property so acquired does not belong constructively to the client. Oil, Inc. v. Martin, 381 Ill. 11, 44 N.E.2d 596; Masterson v. Wall, 365 Ill. 102, 6 N.E.2d 161. In short, a lawyer cannot purchase or acquire the subject matter of litigation, or any interest therein, and hold title adversely to the client. Oil, Inc. v. Martin, 381 Ill. 11, 44 N.E.2d 596. If the attorney does so purchase, he will be deemed a trustee for his client as to the property, or the interest so purchased, for the reason the purchase of the subject matter of the litigation is forbidden as against public policy, and because it places the attorney under temptation to be unfaithful to his trust. (citations)." 56 N. E.2d at 626.

■ Applying the foregoing legal principles to the facts in this case, we are unable to find any basis for a decree establishing a constructive trust nor any right entitling appellant to a reconveyance of its claims.

■ The appellant has challenged four of the trial court's conclusions of law.

The trial court stated:

"That the defendants acquired the claims in question by sale and not by the exercise of the corporation's right of redemption."

The conveyance to Anderson and Claridge occurred after the redemption period had expired, as stated in one of the findings of fact to which Tuab Mineral Corporation has not objected. As we have previously indicated, appellees' offer to Utex was an offer to purchase the claims unencumbered by redemption rights. This offer could not be accepted by Utex until expiration of the statutory redemption period.

■ Appellant objects to another conclusion of law which stated:

"That there was no attorney-client nor confidential relationship existing between Guy Anderson and Tuab Mineral Corporation on April 1, 1960, in connection with the particular transaction."

A finding of fact, to which Tuab Mineral Corporation has not objected, was:

"That there was a clear understanding between Anderson and Bibb that Anderson would not represent Tuab Mineral Corporation as its attorney in the foreclosure proceedings brought by Utex Mining Company."

Thus, any dealings between Tuab Mineral Corporation and Anderson and Claridge with respect to the Utex foreclosure litigation must necessarily have been at arm's length.

The third conclusion of law assigned as error stated:

"That there was no fraud, misrepresentation, or deceit practiced by either Anderson or Claridge upon Tuab Mineral Corporation in connection with the purchase of an undivided one-half interest in the mining claims by Anderson and an undivided one-half interest by Claridge."

None of the findings of fact, whether made by the court or requested by Tuab Mineral Corporation and denied by the court, supported a conclusion that Anderson and Claridge had practiced fraud, misrepresentation or deceit. Anderson did not withhold from Tuab Mineral Corporation any help required of him as one of the attorneys in the Goldberg estate litigation.

The pendency of the Goldberg lawsuit may have diminished the appellant's appeal to prospective investors; but it is just as likely that the effect of a resolution of the controversy would have been equally unattractive. Consummation of settlement negotiations being conducted by the appellant's Tucson counsel, apparently without Anderson's participation, would quite likely have resulted in some recognition of the Goldberg estate's claims, and consequently in some diminution of the appellant's assets. Prosecution of the lawsuit to its conclusion, assuming the unlikely possibility that it could be both tried and disposed of on appeal during the period between the commencement of Utex's foreclosure action and the expiration of the redemption period, would have been disadvantageous to appellant had the Goldberg estate prevailed.

█ Anderson could have helped Tuab Mineral Corporation by personally lending to it (assuming he was able to) the amount of money needed to redeem the claims. The fact that he may have had a more detailed knowledge of the appellant's problems and difficulties and also was in an attorney-client relationship with Tuab Mineral Corporation did not impose on him any additional duty not present in the ordinary attorney-client relationship.

█ Tuab Mineral Corporation was neither prejudiced nor its efforts to solve its problems handicapped or inhibited because of Anderson and Claridge's involvement in its redemption-period proposals and nego-

tiations. The sale to Anderson and Claridge did not and could not prevent Tuab Mineral Corporation from redeeming. The appellant's inability to preserve its claims was caused entirely by other circumstances.

The final conclusion of law claimed to be erroneous was:

"Neither Anderson nor Claridge is a constructive trustee of his interest in the mining claims for Tuab Mineral Corporation."

█ This conclusion necessarily follows from the preceding ones, discussed above, relating to the absence of an attorney-client relationship with respect to the foreclosure action and of wrongdoing by Anderson and Claridge.

Anderson and Claridge cross assigned as errors the trial court's failure to state as conclusions of law that Tuab Mineral Corporation was barred from prevailing in the lawsuit because of laches and estoppel. It is not necessary for us to consider the merits of these affirmative defenses because we have found no reason to reverse the judgment in their favor. Furthermore, were we to hold otherwise, these issues would not properly be before us because Anderson and Claridge are not cross-appellants.

The trial court's denial of Tuab Mineral Corporation's motion for a new trial was proper since we have found that its findings of fact and conclusions of law were correct.

The judgment is affirmed.

ROBERT O. ROYLSTON and ALICE TRUMAN, Superior Court Judges, concur.

NOTE: HERBERT F. KRUCKER and JOHN F. MOLLOY, JJ., having requested that they be relieved from consideration of this matter, Judge ROBERT O. ROYLSTON and ALICE TRUMAN were called to sit in their stead and participate in the determination of this decision.