466 P.2d 395

**SCHOOL DISTRICT NUMBER ONE OF PIMA COUNTY, Arizona, Appellant,**

v.

**Russell HASTINGS, Appellee.**

**No. 2 CA–CIV 741.**

Court of Appeals of Arizona, Division 2.

March 13, 1970.

Review Granted June 2, 1970.

Rehearing Denied April 30, 1970.

See 12 Ariz.App. 164, 468 P.2d 615.

Rose Silver, Pima County Atty.; William J. Schafer III, former County Atty., by Lawrence Ollason, Sp. Deputy County Atty., Tucson, for appellant.

Miller, Pitt & Feldman, by David J. Leonard, Tucson, for appellee.

HOWARD, Chief Judge.

A dispute arose between the architect and the school district-appellant as to the fee the architect was entitled to receive under a written agreement. The architect prepared plans and specifications and supervised the construction of a school building for the said school district. The architect claims that he was entitled to a certain fee, in excess of those paid, by virtue of the rejection of a bid rendered by a contractor based upon the original plans and specifications prepared by him. Thereafter, the plans and specifications were revised by the architect in accordance with the school district's instructions. A later bid was made upon these revised plans and was accepted by the school district. The fee paid the architect by the school district was based upon this accepted bid. The matter was tried by the court, sitting without a jury, and a judgment for the architect was rendered. The school district appeals from this judgment and from all findings of fact, conclusions of law and subsidiary orders.

The architect prepared preliminary studies which were approved by the school district. He was then directed to prepare working drawings, specifications and details and these were also accepted by the school district. Thereafter, a bid was received as to this set of plans and specifications, in the sum of $658,647.00. The school district rejected the bid and the architect was directed to make specific revisions to reduce the cost of construction. He suggested additional items to be revised and indicated in writing that the revisions would be made pursuant to paragraph C(2) of the contract, which authorized payment to the architect for extra services. He revised the working drawings in accordance with the instructions of the school district.

The school district approved the working drawings and a bid of $505,050.00 was thereafter obtained and accepted. For the extra work performed in revising the working drawings, the architect sent a statement for a certain amount which the school district disputed. The parties later compromised this disputed amount for the sum of $3,599.31. The architect then supervised the construction of the school building, the actual cost of which was $500,915.00. The building was completed and approved by the school district.

The contract provides that the architect is to receive certain percentages for his fee and the dispute revolves around which amount, the original bid or the actual cost, is to be used in determining the base upon which the percentages due the architect are to be calculated. The school district contends that the percentages should be based upon the actual cost of construction, namely, $500,915.00, and the architect contends that the percentages should be based upon the first bid, namely $658,847.00. The contract is silent as to any cost restriction or availability of funds. Although the architect knew of a $472,000.00 budget, he indicated on preliminary drawings numbers 8 and 9 that the estimated cost of construction would exceed $472,000.00. The contract also provided that the architect did not guarantee his estimates. The school district made its own estimate and approved the preliminary drawings after having notice of an estimated cost of construction in excess of the budget.

The contract between the parties stated:

\* \* \* \* \* \*

"B. The Owner agrees to pay the Architect for such services, as provided by and in accordance with Arizona Revised Statutes, Section 34–104, a fee not to exceed *six (6) per cent of the construction cost* of the Project, with other payments and reimbursements as hereinafter provided, the said percentage being hereinafter called the Basic Rate.

The Payments hereinafter specified in Section 3 *shall not cumulatively exceed six (6) per cent of the Project.*

1. 1½% of the *estimated cost* for preliminary plans.

2. 4% of the *contract bid* for working drawings and specifications less payment of 1½%.

3. 2% for supervision of construction or *a total of 6% of the total contract cost.*

C.

\* \* \* \* \* \*

2. EXTRA SERVICES AND SPECIAL CASES

If the Architect is caused extra drafting or other expense due to changes ordered by the Owner \* \* \* he shall be equitably paid for such extra expense and the services involved.

\* \* \* \* \* \*

3. PAYMENTS

Payments to the Architect on account of his fee shall be made as follows, subject to the provisions of Section 2 above, and Section 34–104, Arizona Revised Statutes:

For preliminary sketches and tentative design, a commission, *not to exceed one and one-half per cent of the proposed cost of the Project.* \* \* \*

For complete working drawings, specifications and details, a commission not to exceed four per cent of the *actual or proposed* cost, which shall include payments previously made for preliminary sketches. This commission shall be based on the *lowest bona fide bid* or bids.

For supervision of construction, a commission not to exceed two per cent of the *actual cost* of the work."[1] (Emphasis ours.)

The ultimate issue in this matter can be stated as follows: Is the architect entitled to a commission of 4% of the first bid of $658,647.00 or 4% of the actual cost of construction, namely, $500,915.00. The school district contends that the contract itself specifically limits the amount of compensation to be paid the architect to 6% of the construction costs, referring to paragraph B of the contract as hereinabove set forth.

The school district admits that this point is weak as paragraph B(2) of the contract says:

"4% of the *contract bid* for working drawings and specifications. \* \* \*" (Emphasis added.)

But the school district contends that when read in context with the hereinabove set forth paragraphs together with the statement in paragraph B(3), namely "a total of 6% of the total contract cost," then it would seem that the use of the word "contract bid" in paragraph B(2) is merely a misuse of the word "bid." The "contract bid" is the bid which is accepted and upon which a contract is let. Therefore, claiming the bid of $658,847.00 to be a "contract bid" is erroneous.

■ In paragraph B of the contract "six (6)" is typewritten and the printed part continues "of the contruction cost of the Project." The third paragraph under C(3), which is printed says, "[t]his commission shall be based on the lowest bona fide bid or bids." The typewritten provision controls over the printed as being the clear intent of the parties. See Legare v. West Coast Life Insurance Co., 118 Cal. App. 663, 5 P.2d 682 (1931); New York Life Insurance Co. v. Hiatt, 140 F.2d 752, 168 A.L.R. 551 (9th Cir. 1944).

A.R.S. § 34–104 provides in subsection B(2) that the architect is to receive a commission "not to exceed four per cent of the *actual or proposed cost*" (Emphasis added) of the project for the completed working drawings, specifications and details. Under subsection B(3) he is to receive "a commission not to exceed two per cent of the actual cost of the work." Under subsection B(4) if he provides:

"\* \* \* other additional services beyond his basic architectural services \* \* \* and when special arrangement has been made in advance therefor, he

---

[1]. The architect concedes that his supervision fee is 2% of the actual cost of construction.

may in addition be reimbursed for such additional services * * * as the agent may approve."

The architect contends that A.R.S. § 34-104 does not limit the legal amount to be paid to 6% of the actual cost of construction. He contends that under paragraph B of said section, he may be paid for additional services rendered beyond his basic architectural services or if he has reimbursable expenses. That is true, however, that does not change the basic issues in this case. There is no dispute that the architect is entitled to be paid for the additional services rendered and the architect and the school district agreed between themselves as to what that amount was and that amount is not in dispute in this appeal. The sole question is whether the commission of 4% due the architect is to be taken of the first bid, as claimed by the architect, or of the actual cost of construction, as claimed by the school district.

There is no claim here by either side that the plans were abandoned or that two agreements were made and, therefore, the architect is entitled to be paid for both plans. It was agreed that the revisions made by the architect at the request of the school district would be paid for under the contract provisions providing for "extra services and special cases," and, again, this amount was actually agreed to by the parties and that amount is not in dispute.

■ We cannot accept the school district's contention that the sum of $3,599.31 paid by them to the architect was not paid pursuant to an agreement for extra work. The architect responded immediately when requested to revise the working drawings and specifications by calling for revision under that section of the contract which provides for extra compensation. When the architect submitted a bill for extra services, the school board only disputed the amount charged and not the fact that this was a bill for extra services under paragraph C(2) of the contract.

The architect contends that even though the contract provides a limitation on the commission to be paid to him, namely, that the fee shall not exceed 6% of the construction costs of the project or 6% of the project, since the contract also provides for extra payment, the latter provision nullifies the 6% limitation. He further states that A.R.S. § 34-104 contains no 6% cumulative limitation but provides for severable limitations and authorizes reimbursement for additional services or expense. He further contends that subsection D thereof provides for compensation in the event of abandonment or suspension of the project. He alleges that any compensation claimed by him in excess of 6% of the actual cost of the contract is merely a result of the extra work ordered by the school district. This reasoning is correct only as to his being entitled to be paid for the extra work in addition to his commission of 6% of the actual cost of the construction. As to the extra work, the parties agreed that the architect should be paid $3,599.31.

The architect cites the case of Guirey, Srnka & Arnold Architects v. City of Phoenix, 9 Ariz.App. 70, 449 P.2d 306 (1969), and claims that this case is on all fours with the case before us. We fail to see any connection between the two cases. In the *Guirey* case, the court held that the city abandoned the first project, based upon the plans and specifications prepared by the architect, and that it did so through no fault of the architect. The opinion states:

"After the parties were unable to reduce the cost satisfactorily on the first stadium, plaintiffs submitted a second stadium design which was different than the first. * * *" 9 Ariz.App. at 74, 449 P.2d at 310.

The second set of plans and specifications were of a totally new design. The court decided that there were two agreements and that the architect should be paid a commission for each agreement. In the case before us, there is no allegation that there were two separate agreements or that the first agreement was abandoned and a new one entered into. The first agreement

was merely revised to reduce the cost of construction by eliminating unnecessary extras.

 The architect claims that, since the school district made no motion to amend the findings or judgment pursuant to Rule 52(b) of the Rules of Civil Procedure, 16 A.R.S., the judgment should be affirmed on the basis that the school district had utterly failed to raise these matters below or to comply with the said requirements of Rule 52(b). Rule 52(b) of the Rules of Civil Procedure states:

"* * * When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the superior court an objection to such findings or has made a motion to amend them or a motion for judgment."

There is no requirement in said rule, as appellee would have us believe, that a motion must be made to amend the findings or the judgment.

 This court has the power to set aside findings of fact if they are clearly erroneous. Tuab Mineral Corp. v. Anderson, 3 Ariz.App. 512, 415 P.2d 910 (1966); Brand v. Elledge, 101 Ariz. 352, 419 P.2d 531 (1966).

The trial court made twenty-five findings of fact. The only finding of fact that can be questioned is number 24. The pertinent part of finding number 24 is as follows:

"24. That the obligation of School District Number One of Pima County, Arizona, to Russell Hastings is, as follows:

First set of working drawings, specifications and details 26,345.88"

We believe that the amount, $26,345.88, is not a finding of fact but a conclusion of law. The trial court settled the dispute over the interpretation of the meaning of certain words in the contract by having accepted as the true meaning of the contract

the first and higher bid of $658,647.00. The court then took 4% of that amount and thus arrived at the figure of $26,345.-88. Therefore, finding of fact number 24 is in effect a conclusion of law. In paragraph 1(a) of the trial court's conclusions of law, these same facts are set forth, namely, that the architect is entitled to 4% of the lowest bona fide bid, being the proposed cost of construction, i.e., 4% of $658,647.00 which is $26,345.88. We agree with all of the findings of fact of the trial court except for finding number 24 and we further agree with all of the conclusions of law of the trial court except for paragraph 1(a) thereof.

There is no question that the contract agreement is unclear. The agreement refers to "construction costs," "estimated cost," "contract bid," "total contract cost," "proposed cost of project," "actual or proposed cost," "actual cost," and "lowest bona fide bid."

Let us examine the agreement again. Paragraph B of the agreement says that the fee of the architect is not to exceed 6% of the construction cost of the project and that it would be called the basic rate. Said paragraph also incorporates by reference A.R.S. § 34–104.

 According to paragraph B(1), if the architect prepared preliminary sketches and tentative designs and nothing further was done by him, then he was to receive 1½% of the proposed cost of the project. If the architect completed working drawings, specifications and details, and nothing further was done, then he was to get 4% of the actual or proposed cost including the previous payment of 1½%. This means that if construction were completed, then he was to get 4% of the actual cost, but if construction never begins or is not completed, then he is to get 4% of the proposed cost based upon the lowest bona fide bid or proposed cost. In the latter event the use of the bid of $658,647.00 would be proper.

For supervising construction of the project, he was to receive 2% of the actual

cost of the work. But, in no event, is the architect to receive more than 6% of the actual cost of construction plus any extra services performed thereunder at the request of the school district.

To recapitulate, the agreement provides that the architect shall be paid a commission of not more than 6% of the actual cost of construction plus a fee for extra services rendered. The parties agreed that the value of the extra services rendered was $3,599.31. The commission due the architect of 6% of the actual cost of construction must be based upon the figure of $500,915.00.

This matter is remanded to the trial court to modify the judgment in accordance with our opinion herein.

KRUCKER, J., concur.

HATHAWAY, Judge (dissenting).

The architect prepared two sets of working drawings. After the first set was complete and approved by the School District and published for bid, the lowest bona fide bid, $658,547.00, was rejected.

The architect was then instructed to revise the plans in a direction to economize the project. He complied by calling for revision under the extra compensation section of the contract. The revised working drawings were approved by the School District, published for bid and the project proceeded through construction.

The dispute between the parties concerning the architect's fee was finally resolved in favor of the architect after he filed a lawsuit and obtained a judgment for $11,-284.18 based upon the following computation.

| | |
|---|---:|
| First set of working drawings, specifications and details | |
| 4% of $658,547.00 | $26,345.88 |
| Extra work (as compromised) | 3,599.31 |
| Supervision of construction | |
| 2% of $500,915.00 | 10,018.30 |
| | $39,963.49 |
| Less partial payments | 28,679.31 |
| | $11,284.18 |

The majority has granted the School District's wish that the architect not be compensated for the extra services required to prepare the first set of working drawings. Those drawings were approved, submitted to bid and then abandoned. They were then revised and as revised, accepted by the District.

"Where the architect prepared plans and specifications for a building pursuant to an unconditional order or direction of the owner, he is entitled to recover for his services whether or not the plans are used if they substantially comply with the employer's instruction." 6 C.J.S. Architects § 14a.

The contract provides:

"If the architect is caused extra drafting or other expense due to changes ordered by the Owner, * * * he shall be equitably paid for such extra expense and the services involved.

\* \* \* \* \* \*

"If any work designed or specified by the Architect is abandoned or suspended, in whole or in part, the Architect is to be paid for the service rendered on account of it." Contract, para. C2, Exhibit 1

Compensation for the unused working drawings should be computed at 4% of the

lowest bona fide bid based on those drawings, as the trial court did. The contract contemplates payment for extra services and payment for the first set of approved working drawings whether used or not. The cost limitation in the contract does not restrict compensation for extra services.

The judgment should be affirmed.