Earl H. Gromer, Individually, and as Trustee, and Quentin K. Ford, Plaintiff and Counterdefendant, Counterdefendant, Appellants, v. Irma L. Hahn, Defendant and Counterplaintiff for Herself and as Administratrix of the Estate of Herman Hahn, Appellee.

Irma L. Hahn, Defendant and Counterplaintiff for Herself and as Administratrix of the Estate of Herman Hahn, Cross-Appellant, v. Earl H. Gromer, Individually, and as Trustee, and Quentin K. Ford, Plaintiff and Counterdefendant, Counterdefendant, Cross-Appellees.

Gen. No. 52,050.

First District, First Division.

June 10, 1968.

Mitchell Kilanowski, of Chicago, for appellants.

Jackson L. Boughner and Carl A. Gorski, of Chicago, for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiff, Earl H. Gromer, an attorney, by way of a complaint to foreclose a trust deed, sought to collect a $2,000 balance on a $12,249.76 note executed and delivered to him on May 4, 1959, by his clients, Herman F. Hahn (deceased) and defendant Irma L. Hahn, his wife. Mrs. Hahn, individually and as administratrix of the estate of her deceased husband, answered and filed six counterclaims against Gromer and Quentin K. Ford, an accountant.

In sum, in 1956 the Hahns were the owners and operators of two laundry and dry cleaning corporations in Arlington Heights, Illinois—Park Lane Launderers and Cleaners, Inc., and Grove Laundry and Cleaners, Inc.

Plaintiff and counterdefendant Earl H. Gromer was their attorney, and counterdefendant Quentin K. Ford was their accountant. Financial difficulties resulted in the formation of new corporations, transfer of assets, and bookkeeping maneuvering, in which both Gromer and Ford participated. Hahn died on May 17, 1959. In July 1959, Gromer and Ford transferred all of the assets of the previous corporations to Dryden Cleaners, Inc., the last of the corporations formed. On January 30, 1962, Gromer and Ford sold their Dryden stock for $22,000. Mrs. Hahn, as a minority stockholder of Dryden, received nothing. On December 21, 1962, Gromer filed the instant complaint to collect the alleged balance of $2,000 on the note of May 4, 1959. Mrs. Hahn answered and counterclaimed as aforesaid.

After an extended trial, a decree was entered which made 51 findings. The orders of the decree include: (1) that the complaint to foreclose be dismissed and defendant Gromer was ordered to release the trust deed and cancel the note of May 4, 1959; (2) that counterplaintiff Irma Hahn individually recover from counterdefendant Earl H. Gromer $1,564.16, with costs; (3) that counterplaintiff Hahn, as administratrix, recover from counterdefendants, Gromer and Ford, $12,754.42; and (4) that counterplaintiff take nothing by her counterclaim Two.

Plaintiff Gromer appeals from the order dismissing his complaint to foreclose and the $1,564.16 judgment against him in favor of counterplaintiff Hahn. Counterdefendants, Gromer and Ford, appeal from the $12,754.42 judgment against them and in favor of counterplaintiff Hahn, as administratrix.

Defendant and counterplaintiff, Irma L. Hahn, cross-appeals from that part of the decree which found against her on her counterclaim Two, in which she sought, as administratrix, to recover from defendants Gromer and Ford, $22,000, the proceeds of sale of stock of Dryden

Cleaners, Inc., allegedly held by them as nominees for her deceased husband.

As noted, in 1956 both Park Lane and Grove were in financial difficulties. In February 1956, a new corporation, Heights Equipment Company, was formed, and the stockholders were Herman Hahn, Irma Hahn, and Earl Gromer. Heights Equipment acquired all of the machinery and equipment used by Park Lane and Grove. Then Heights leased the equipment back to Park Lane and Grove, the two operating companies. At that time Heights assumed certain liabilities to Herman Hahn, which by 1959 amounted to $12,754.42.

By July 1957, Park Lane and Grove had ceased doing business. On July 1, 1957, a new operating company, Arlington Launderers and Cleaners, Inc., was formed. Herman Hahn, Irma Hahn, and Earl Gromer were the stockholders. On July 5, 1957, Arlington leased all the machinery and equipment which had been leased to Park Lane and Grove and took over the operation of the dry cleaning business in Arlington Heights which had been conducted by these two corporations. The machinery and equipment continued to be the property of Heights Equipment Company.

In November 1958, Arlington was having financial troubles and was facing bankruptcy. A new corporation, Dryden Cleaners, Inc., was formed and incorporated on or about November 26, 1958, and initially stock was issued only to Gromer and Ford. Dryden entered into a lease with Heights for the machinery and continued to conduct the dry cleaning business on the same premises, using the same machinery and equipment and handling the same business that Arlington had handled.

On December 29, 1958, Arlington filed a petition in bankruptcy, and it was represented in that proceeding by Earl Gromer. During the winter and spring of 1959, Herman Hahn operated Dryden Cleaners, leasing the

machinery and equipment from Heights. The trustee in bankruptcy discovered a conditional sales contract executed by Heights Equipment and Arlington. He took the position, after an examination of the books and records, that the affairs of these two corporations were completely commingled, and that this machinery and equipment rightly belonged to Arlington and should be turned over to the trustee in bankruptcy and sold for the benefit of the Arlington creditors. He cited Ford, Gromer and Herman Hahn into court and made this demand. As the continuation of the cleaning business conducted by Dryden was dependent upon the retention of the disputed machinery and equipment, negotiations were entered into with the trustee, and he agreed to settle his claim of ownership for $4,000.

In May 1959, Gromer drew up a list of all sums previously owed to him by the Hahns, which totaled about $8,000, and added an item of $4,000 as a loan to be used to satisfy the claim of the trustees in bankruptcy. Gromer prepared a trust deed and a promissory note for $12,249.76, dated May 4, 1959, which were signed by Herman and Irma Hahn. It is on this trust deed and promissory note that Gromer filed his complaint to foreclose.

On May 17, 1959, Herman Hahn died. In June 1959, Irma Hahn delivered to Gromer $22,001.74, proceeds of insurance policies on her deceased husband, to be used to pay off miscellaneous claims. $1,495.20 was returned to Mrs. Hahn, and a statement indicates that Mrs. Hahn still owed Gromer $2,000 secured by a mortgage on her home, the amount sought to be collected by Gromer in the instant suit.

At this point the machinery and equipment still belonged to Heights Equipment and was being used by Dryden. Later, in July 1959, the machinery and equipment appeared on the books of Dryden as its property.

The complaint to collect the $2,000 balance on the note of May 4, 1959, was filed on December 21, 1962. The answer of Irma Hahn denied any liability on the note. In substance, the allegations of the six counterclaims filed by her were as follows.

The first counterclaim alleged that neither of the Hahns received the $4,000 excess of the face amount of the note of May 4, 1959, and that the trust deed and note should be canceled and judgment entered against the counterdefendant Gromer in the amount of $1,730.88. The court found for Irma Hahn on this counterclaim in the sum of $1,564.16 (findings 41 and 48).

The second counterclaim was for the selling price of stock of Dryden Cleaners, Inc. Gromer and Ford held a majority of the stock and received $22,000 on the sale. Irma Hahn claimed that this stock was held by Gromer and Ford as nominees for her husband and, as administratrix, she was entitled to the $22,000. On this counterclaim the court found against counterplaintiff, and she cross-appeals from this part of the decree.

The third, fourth, fifth and sixth counterclaims were brought against Gromer and Ford by Mrs. Hahn as administratrix. Summarized, these claims alleged that Herman Hahn was an unsecured creditor of Heights Equipment Company in the amount of $12,754.42, and that Gromer and Ford misappropriated the assets of the company without providing for this debt. The court found that the estate of Herman Hahn had been damaged in the amount of the $12,754.42 and gave judgment against counterdefendants Gromer and Ford in that amount.

The findings of the decree which disposed of the first, third, fourth, fifth and sixth counterclaims are as follows:

30. Finds that in July of 1959, the Estate of Herman Hahn was the sole unsecured creditor of Heights

Equipment Co. in the amount of $12,754.42, as reflected in the books of that corporation.

31. Finds that in July of 1959, Earl H. Gromer and Quentin K. Ford, as officers and directors of Heights Equipment Co., misappropriated all of the assets of Heights Equipment Co. and converted these assets to their own use by transferring them to Dryden without making any provision for the Estate of Herman Hahn, the sole unsecured creditor of Heights Equipment Co.

32. Finds that the transfer of July 1959 whereby Earl H. Gromer and Quentin K. Ford as directors of Heights Equipment Co. distributed all of the assets of Heights Equipment Co. to Dryden was in violation of section 157.42–2, chapter 32 of the Illinois Revised Statutes.

33. Finds that the misappropriation and conversion, the conveyance and the distribution of the assets of Heights Equipment Co. by its officers and directors, Earl H. Gromer and Quentin K. Ford, was done without the knowledge and consent of and was concealed from Irma Hahn, the other officer and director and the minority shareholder of Heights Equipment Co. Irma Hahn, individually and as administratrix of the Estate of Herman Hahn, deceased, did not discover the existence of the indebtedness of Heights Equipment Co. to the Estate of Herman Hahn, deceased, until May 17, 1962; prior to that date, Earl H. Gromer and Quentin K. Ford had custody and control of all the corporate and accounting records of Heights Equipment Co. The misappropriation and conversion, the conveyance, and the distribution of the assets of Heights Equipment Co. by Earl H. Gromer and Quentin K. Ford was not discovered by Irma Hahn until October 27, 1964.

34. Finds that the misappropriation and conversion, the conveyance, and the distribution of the assets of Heights Equipment Co. rendered that corporation insolvent to the detriment of its sole unsecured creditor, the Estate of Herman Hahn, deceased.

35. Finds that in July of 1959, Earl H. Gromer and Quentin K. Ford, as officers, directors and majority shareholders of Dryden caused Dryden to stop making rental payments to Heights Equipment Co. for the use of the machinery and equipment which Dryden had been leasing from Heights Equipment Co.; they then caused Dryden to record this machinery and equipment on its books of account as its own property in the amount of $15,077.12 with Dryden assuming only those liabilities of Heights Equipment Co. which were secured by this machinery and equipment which liabilities amounted to $12,-077.12.

36. Finds that thereafter, on September 18, 1961, Heights Equipment Co. was involuntarily dissolved in the Circuit Court of Sangamon County, Chancery No. 798–610 for nonpayment of franchise taxes.

37. Finds that on or before January 30, 1962, Earl H. Gromer and Quentin K. Ford sold all of their shares in Dryden to one Barney Erickson for a total consideration of $22,000.

38. Finds that the Estate of Herman Hahn, deceased, has been damaged in the sum of $12,754.42.

. . .

41. Finds that neither Irma L. Hahn nor Herman Hahn received the $4,000 excess of the face amount of the note over the total indebtedness specified in paragraph 39, but instead Earl H. Gromer paid $3,500 thereof to Mitchell Kilanowski, who in turn paid $3,000 to Charles David Maley, Trustee in the Arlington bankruptcy and retained $500 as his fee.

■■■■■■■

42. Finds that the note was secured by a trust deed on the premises known as 415 Evergreen Street, Arlington Heights, Illinois.

. . .

44. Finds that in June of 1959, Irma Hahn at the request of Earl H. Gromer, delivered to Earl H. Gromer funds totaling $22,001.74.

45. Finds that in the final settlement between Earl H. Gromer and Irma Hahn, dated June 25, 1959, Earl H. Gromer improperly charged Irma Hahn a $3,500 item labeled "Heights advance" together with interest thereon in the amount of $29.16; this $3,500 was paid by Earl H. Gromer for the benefit of Heights Equipment Co. and ultimately for the benefit of Dryden to Mitchell Kilanowski who retained $500 as his legal fee and paid $3,000 to the Trustee in the Arlington Bankruptcy.

46. Finds that in the final settlement between Earl H. Gromer and Irma Hahn, dated June 25, 1959, Earl H. Gromer improperly charged Irma Hahn a $35 item labeled "Interest advanced to Dryden (stock taken in lieu of debt)," this $35 item was an interest charge to Irma Hahn on the $1,000 paid by Earl H. Gromer for the first fifty shares of stock in Dryden, twenty-five of which were issued to Earl H. Gromer and twenty-five to Quentin K. Ford.

47. Finds that Earl H. Gromer returned to Irma Hahn the sum of $1,495.20.

48. Finds tht Earl H. Gromer has been indebted to Irma Hahn since June 25, 1959 in the amount of $1,564.16 as provided for in paragraphs 45 and 46 of this Decree.

On appeal, Gromer and Ford contend: (1) The defendant and counterplaintiff must prove the allegations of fraud by clear and convincing evidence. (2) The elements of an action for fraud and deceit are material

284

statements of fact which were knowingly untrue and were made for the purpose of influencing the other party, and upon which they relied. (3) An account stated is deemed conclusive evidence of the accuracy and correctness of the items thereof and of the liability of the party, both at law and in equity, unless impeached for mistake or fraud. (4) The Bulk Sales Act must be strictly construed and for a number of given reasons was improperly applied here.

■ Initially, we do not believe that the burden of proof to show fraud was on Mrs. Hahn, either as a defendant or as a counterplaintiff. It is not disputed that the court found that Gromer and Ford were employed by the Hahns in these matters as an attorney and as an accountant (findings 49 and 50). Their relationship with the Hahns was one of trust and confidence. Therefore, it was the burden of Gromer and Ford to prove "the perfect fairness, adequacy and equity of the transaction, and upon [their] failure to make such a proof a court of equity will treat the case as one of constructive fraud." Warner v. Flack, 278 Ill 303, 307, 116 NE 197 (1917); Vrooman v. Hawbaker, 387 Ill 428, 435, 56 NE2d 623 (1944).

■ Next considered is the contention of Gromer based on the theory of "an account stated," which primarily refers to the note of May 4, 1959. Defendant, Mrs. Hahn, states, "In this connection it should be noted that there is no allegation of an account stated in the pleadings, and hence no such issue is before the court." We agree.

Next considered is the contention of Gromer and Ford that the Bulk Sales Act was improperly applied here. The sixth counterclaim did allege that the transfer of assets from Heights to Dryden was in violation of the Bulk Sales Act (Ill Rev Stats 1959, c 121½, § 80a). However, the decree made no findings relating to the Bulk

Sales Act. It is clear that the judgment of the court was premised on the fifth counterclaim, which alleged violation of section 157.42–2 of chapter 32, Illinois Revised Statutes, "The Business Corporation Act of 1933." The decree found that the July 1959 transfer of all the assets of Heights to Dryden by Gromer and Ford was in violation of section 157.42–2 and was made without provisions for the debt of the estate of Herman Hahn, deceased, the sole unsecured creditor of Heights, whereby the estate was "damaged in the sum of $12,754.42," (findings 31 to 38).

We find no merit in the contentions of Gromer and Ford. After reviewing the evidence herein, we conclude the decree orders from which Gromer and Ford appeal are substantially supported by the evidence and should be affirmed.

Next considered is the cross-appeal of Mrs. Hahn from that part of the decree which ordered that "Irma Hahn, as Administratrix of the Estate of Herman Hahn, Deceased, take nothing by her Counterclaim Two and that the plaintiff and counterdefendant, Earl H. Gromer, and the counterdefendant, Quentin K. Ford go hence without day."

On this point it is the contention of Irma Hahn that "Dryden Cleaners was formed for the benefit of her husband, Herman, and that the stock was taken in the names of Ford and Gromer as nominees for her husband, Herman Hahn. She testified that both Ford and Gromer told her after the death of her husband that they would keep the business for her and the members of her family," and when they testified that they were not nominees for Herman Hahn or Irma Hahn "they made the completely incredible claim that they started Dryden Cleaners with the intent of going into the laundry business themselves. They explained that the Hahns were simply people who were going to run it for them," and "we have, therefore, a conflict in the oral testimony."

Irma Hahn argues that this case is "a pattern of operations extending over many years which indicates clearly that this was Herman Hahn's business and that Ford and Gromer were merely his accountant and lawyer and had no personal ownership or interest in it." Cited in support of this contention is Vrooman v. Hawbaker, 387 Ill 428, 56 NE2d 623, where the court said (p 435):

> "Where this relation of attorney and client exists and the attorney receives anything of benefit thereby, either by purchase from the client or by acquiring interests contrary to the interests of his client, the burden of proof rests upon the attorney to show the fairness of the transaction, that it was equitable and just, that it did not proceed from undue influence, and that the property so acquired does not belong constructively to the client. (Oil, Inc. v. Martin, 381 Ill 11; Masterson v. Wall, 365 Ill 102.) In short, a lawyer cannot purchase or acquire the subject matter of litigation, or any interest therein, and hold title adversely to the client. (Oil, Inc. v. Martin, 381 Ill 11.) If the attorney does so purchase, he will be deemed a trustee for his client as to the property, or the interest so purchased, for the reason the purchase of the subject matter of the litigation is forbidden as against public policy, and because it places the attorney under temptation to be unfaithful to his trust."

■ After considering the evidence on counterclaim Two, we are of the opinion that the findings of the decree against Gromer and Ford represent items which basically and equitably should be credited against the $22,000 received by Gromer and Ford for their Dryden stock. Considering these items and the period of time Dryden was operated by Gromer and Ford after the death of Herman Hahn, we are not persuaded that the order of the decree on counterclaim Two is palpably contrary

to the evidence. We conclude that the court's order on counterclaim Two should be affirmed. Quist v. Streicher, 18 Ill2d 376, 380, 164 NE2d 44 (1960).

Finally, Irma Hahn contends that the trial court should have allowed her interest on the sums which the court directed be paid to her by Gromer and Ford from the basic dates of the findings, and that the cause should be remanded to the trial court to enter interest on all of the amounts due Irma Hahn from the dates previously set forth. In this case, we consider the allowance of interest to be within the discretion of the trial court. We are not persuaded that the failure of the court to allow interest to Mrs. Hahn was an abuse of discretion. See 23 ILP, Interest, § 11, p 4.

For the reasons given, the decree appealed from is affirmed in its entirety.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.