HELEN C. JACOBSEN, Plaintiff-Appellee, *v.* NATIONAL BANK OF AUSTIN, as Trustee, *et al.,* Defendants-Appellees—(LEE N. ROMANO *et al.,* Counterplaintiffs and Third-party Plaintiffs-Appellants, *v.* NATIONAL BANK OF AUSTIN, as Trustee Under Trust No. 3679, *et al.,* Counterdefendants-Appellees, (ROBERT CAREY, SR., Third-party Defendant-Appellee.) )

(No. 55879;

First District—October 25, 1972.

*Rehearing denied November 22, 1972.*

136

McDermott, Will & Emery, of Chicago, (Hamilton Smith, of counsel,) for appellants.

James E. Betke and Edward M. White, both of Chicago, for counter-defendants and third-party defendant-appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This suit arose from an action to foreclose a mortgage on twenty acres of land held in a land trust. This appeal is from an order of the Circuit Court of Cook County granting a motion to dismiss a counterclaim and third-party complaint by Lee Romano and his wife Barbara, two of the beneficiaries of the trust. They allege their attorney persuaded them to execute agreements substantially diminishing their interests in favor of members of his family, without adequate consideration. The issue for review is whether the allegations that the attorney used his fiduciary relationship to take advantage of his clients are sufficient to state a cause of action.

In 1961 Barbara Romano retained Robert F. Carey, Sr., and his law firm to represent her in connection with her attempt to purchase approximately twenty acres of real estate near O'Hare Airport. Carey had previously represented the Romanos in other matters. In November of 1961, she entered into an agreement which gave her the option to purchase the twenty acres by June 1, 1962, for $485,000. The option agreement required her to "cause [her] attorney, Robert F. Carey, to immediately proceed with the rezoning" of the twenty acres. In May of 1962, Shapiro, the authorized agent for the beneficiaries of Trust 20346 which owned the property, agreed to extend the date by which the option to purchase could be exercised. On May 29, 1962, Lee Romano, at Shapiro's request, procured a $200,000 loan from Carey to Trust 20346. To secure the loan Carey took a first mortgage in the amount of $200,000. On June 5, 1962, Shapiro and Barbara Romano executed an amendment to the option agreement of November 28, 1961, extending the time for the exercise of the option. The rezoning of the property was also approved.

In late August, 1962, Lee Romano, on the advice of Carey, filed for bankruptcy. Carey and his law firm acted as Romano's attorneys in the proceedings.

Prior to October 1, 1962, the Romanos allege it was understood and agreed between themselves and Carey that if the option to purchase was exercised, the person or persons who provided the money to purchase would have a 50% interest and they would retain a 50% interest in the property.

On October 1, 1962, the option agreement was exercised. It was amended to increase the purchase price to $526,000, less the mortgage indebtedness of $200,000. The sum of $50,000 was to be paid when the option was exercised, $100,000 to be paid within five days after title was shown to be good, and the $176,000 balance was to be covered by a second mortgage retained by the sellers payable in two installments of $88,000 each, the first payment due six months after closing. The amendment further provided a reduction from $176,000 to $160,000 would be allowed if both installments were paid before January 10, 1963. Carey represented Barbara Romano in the execution of the contract.

The Romanos allege it was agreed with Carey that he would receive the first $200,000 realized from the resale of the property plus 10% of the equity when he released his first mortgage; that Carey or his nominee would acquire the second mortgage, and if and when that mortgage was released, the holder would receive the next $176,000 plus 10% of the equity; that the investors, to be procured by Carey, would, for an investment of $150,000, receive the next $150,000 plus 30% of the equity; and the Romanos would be entitled to 50% of the equity. Subsequently, Carey or his nominee acquired the second mortgage.

After this agreement was reached, Carey failed to locate persons willing to invest the $150,000. Lee Romano then arranged for Barbara to put up $75,000 for 10% of the equity, and for Joseph and Anna Abbate, friends of the Romanos, to put up the other $75,000 in return for 10% of the equity. Romano took the remaining 10% of the equity for raising the money.

Thereafter, Carey advised Romano he had promised Jane Lyons Ford, his sister-in-law, that she could acquire a 6⅔% interest in the equity for $50,000, and requested that Barbara and the Abbates accept 6⅔% interests for $50,000. As a result of these agreements Carey had a right to 10% of the equity if he released his first mortgage; Carey or his nominee had a right to 10% if the second mortgage were released; Barbara, the Abbates, and Jane Lyons Ford each had a right to 6⅔%, and Romano had a right to 60%.

The Romanos then allege Carey forced them to sign an agreement on

November 13, 1962, by threatening to foreclose the second mortgage when it became due. The interests and amounts contributed under this agreement are as follows:

| | |
|---|---|
| Olive Graham—6⅔% | $50,000.00 |
| | (heretofore paid) |
| Lee N. Romano—35% | $25,000.00 |
| Joseph S. Abbate and Anna L. Abbate, as joint tenants with the right of survivorship—6⅔% | $25,000.00 |
| Thomas F. Carey—6⁵⁄₁₂% | 4,181.03 |
| Jane Lyons Ford—3⅓% | 25,000.00 |
| Helen Carey—7¼% | 3,750.00 |
| Robert Carey, Jr.—7¼% | 3,750.00 |
| Anthony Carey—7¼% | 3,750.00 |
| Jean O'Neil—7¼% | 3,750.00 |
| Judith Tharp—7¼% | 3,750.00 |
| Patrick S. Filter—4% | 2,068.97 |
| Barclay Graham and Olive Graham, as Trustees for Thomas F. Carey—1⅔% The deposit hereinabove recited for Thomas F. Carey shall be deemed payment for this share as well as the share set forth opposite his name. | |

A majority of 51⅔% as allotted to Thomas F. Carey, Jane Lyons Ford, Helen Carey, Robert Carey, Jr., Anthony Carey, Jean O'Neill, and Judith Tharp, who were all relatives of Carey, Sr. Patrick S. Filter was a law partner of Robert Carey, Sr.

In 1964, Romano sold and assigned two 6⅔% interests to the Abbates for $50,000 each.

By February, 1965, the twenty acres had allegedly increased in value to over one and one-half million dollars. Romano alleges he solicited a loan of $20,000 from Carey for which he had no independent counsel. Carey obtained the money from Jane Lyons Ford. Romano alleges Carey told him the loan would have to be secured by an assignment of a 6⅔% interest in the land. Carey and Jane Lyons Ford at all times have asserted the transaction was a sale and not a loan, and the assignment was an absolute assignment rather than one given for security purposes. Romano alleges by this means one of Carey's relatives obtained an interest worth at least $60,000 for only $20,000.

On March 8, 1965, Carey agreed to loan Romano $20,000 to be secured by an assignment of a 6⅔% interest in the land. Carey then prepared an absolute assignment which Romano signed. At the same time he

prepared an option agreement by which Romano reserved a right to buy back the interest for a period of one year. That option was not exercised within that period, but it was extended until September 8, 1966. The extension agreement provided for the release by the Romanos of all claims they had against Carey, particularly all claims arising out of Carey's acquisition of property in 1959, which the Romanos allege he obtained from them fraudulently. Romano was unable to repurchase the 6⅔% interest by September 8, 1966.

■■ The Romanos contend their allegations claiming they were persuaded by their attorney to transfer substantial interests to members of the attorney's family for inadequate consideration state a cause of action. The law in Illinois is well settled that when an attorney deals with his client, the burden of proof is on him to show fairness. (*Jennings v. McConnel* (1855), 17 Ill. 148; *Vrooman v. Hawbaker* (1944), 387 Ill. 428.) In *Vrooman*, the court said:

"Where this relation of attorney and client exists and the attorney receives anything of benefit thereby, either by purchase from the client or by acquiring interests contrary to the interests of his client, the burden of proof rests upon the attorney to show the fairness of the transaction, that it was equitable and just, that it did not proceed from undue influence, and that the property so acquired does not belong constructively to the client."

Also, see *Gromer v. Hahn* (1968), 97 Ill.App.2d 276.

■■ In the instant case the Romanos have alleged sufficient facts to place the burden on Carey to prove the fairness of the dealings. In reply to the allegations Carey maintains that all agreements were clear on their face and understandingly entered into, that *laches* applies because the Romanos waited several years to bring this action, and also disputes some of the allegations. However, on a motion to dismiss all allegations well pleaded must be taken as true. It was error to sustain the motion to dismiss. The cause should be heard on the merits and then decided.

For these reasons the judgment of the Circuit Court of Cook County is reversed and the cause remanded for trial.

Reversed and remanded.

BURMAN and ADESKO, JJ., concur.