Noel E. Johnson, Plaintiff-Appellant, *v.* Board of Junior College District No. 508 *et al.*, Defendants-Appellees.—Leon Novar, Plaintiff-Appellant, *v.* Board of Junior College District No. 508 *et al.*, Defendants-Appellees.

(Nos. 56967-68 cons.;

First District (2nd Division)—July 29, 1975.

Jewel N. Klein, of Chicago (Mary Lee Leahy, of counsel), for appellants.

Howard Arvie and Pretzel, Stouffer, Nolan & Rooney, both of Chicago (Joseph B. Lederleitner, of counsel), for appellees.

Mr. JUSTICE HAYES delivered the opinion of the court:

Plaintiffs Leon Novar and Noel Johnson, formerly professors at Wilson Junior College (a unit in the system of Chicago City Colleges) appeal from an order dismissing their respective amended complaints for libel and miscellaneous related torts. Their complaints were brought against approximately 20 defendants, comprising the Board of Education of Junior College District 508, its members, certain administrative officers of the Board and of the College, and certain faculty members of the College. Basically, the suits arose out of a chain of events prompted by student charges that the appellants had refused to use black-authored books in their courses in breach of a Departmental agreement to do so. After considerable turmoil, Novar and Johnson were transferred at the end of the semester involved to another junior college within the system.

These cases were consolidated for hearing below and were decided together. Plaintiff's original complaints consisted respectively of 13 counts in 55 pages (plaintiff Novar) and 15 counts in 63 pages (plaintiff Johnson); both complaints were stricken as verbose. Upon plaintiffs' filing of two still-lengthy amended complaints, defendants renewed their motion to dismiss. The trial court thereupon dismissed the respective complaints on the merits, treating all counts of the complaints as an attempt to state a cause of action in libel. Citing *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L.Ed.2d 686, 84 S.Ct. 710, and *Rosenbloom v. Metromedia, Inc.* (1971), 403 U.S. 29, 29 L.Ed.2d 296, 91 S.Ct. 1811, the trial court held that, on the facts alleged in the complaint, no cause of action in libel could be sustained.

While we disagree with the trial court's analysis of the substance of some of the counts in the complaints, we conclude that the complaints were properly dismissed on the merits. For various reasons which will be set forth in this opinion, plaintiffs' complaints fail to state any cause of action.

The two complaints are virtually identical except for two additional counts in the Johnson complaint. Therefore, for the purposes of this opinion, both complaints, with the exception noted, will be treated as identical. The Board, its members, and certain administrative officers are named in all counts except Counts VII and VIII. An individual faculty member is also named in Count XI. Members of the faculty only are named in Count VII. The chancellor of the College System only is named in Count VIII. All allegedly defamatory statements are included in the complaints as exhibits. We will review the allegations of the several counts.

Paragraphs 1 to 18 of Count I contain information common to all counts and are realleged, with few exceptions, in all Counts. These para-

graphs detail the careers of the respective plaintiffs and allege that each plaintiff had discharged all duties at the College and had complied with all the rules and regulations of the Chicago College System. In particular, it is alleged that each plaintiff had complied with the requirements of the Department of Social Science of Wilson College, imposed by virtue of a certain agreement with certain black students, by submitting a booklist in May of 1968 to the chairman of the department, which booklist had been accepted by the chairman and posted. The first 18 paragraphs further allege various duties of the Board, of its members, and of the administrators. In particular, it is alleged that those defendants had a duty to protect plaintiffs in their persons and reputations and to refrain from taking any actions which would cause injury to the persons or reputations of plaintiffs. It was further alleged that, prior to 8 November 1968, defendants had knowledge that the Afro-American Club at the College had violated college rules by seizing administrative offices and had selected plaintiffs as the prospective victims of further violent acts.

Counts I, III and V allege that the defendants either negligently or willfully and wantonly breached their duty to protect the plaintiffs' reputations by allowing certain defamatory documents to be published by certain students.

Counts II and IV allege that defendants either negligently or willfully and wantonly breached their duty to protect the plaintiffs' safety by failing to prevent students from taking control of plaintiffs' classes and from confining plaintiffs to their classrooms against their will.

Counts VI and IX allege that certain statements by the chancellor of the Chicago Junior College System constitute libel by virtue of innuendo and that this libel can be imputed to the remaining defendants who were members of the College Board.

Counts VII, VIII and X allege that statements published by certain faculty members, by the chancellor of the Chicago College System, and by the dean of instruction and faculty at Wilson College were libelous per se and that the alleged libelous statement in Count V is imputable to each of the defendants.

Count XIII alleges that, as a result of an order to stop meeting with their classes, issued in violation of established Board policy, plaintiffs suffered irreparable injury to their professional ability in that they were deprived of classroom contact.

Count XIV of Johnson's complaint alleges that defendant Charles Monroe, president of Wilson College Campus, intentionally inflicted emotional distress upon Johnson by requiring her to leave a faculty meeting. Count XV of Johnson's complaint alleges that the act of transferring her to a different junior college carried with it a defamatory innuendo in

that it was the established policy of the Board not to terminate an employee within a contractual period except for incompetence, immorality or conviction of a felony.

■■ Initially, we note that plaintiffs have cited no authority, nor has our research disclosed any, in support of the proposition that faculty, administrators or board members of an educational institution have any duty to prevent students from making statements about given faculty members. We will not impose such a duty here. Hence, we will consider Counts I, III, and V no further.

Similarly, no authority has been cited to us, nor have we found any, in support of the proposition that the defendants had a duty to prevent students and other persons from taking control of the plaintiffs' classes. (See Restatement (Second) of Torts § 315 (1965).) The allegations that defendants approved and ratified these acts are mere conclusions of law unsupported by any facts in the pleading. Thus, Counts II and IV were properly stricken.

■■ Counts VI and IX appear to allege that certain statements published by the chancellor of the Board of Education were libelous per quod. These counts allege that the statements made by the chancellor to the effect that plaintiffs would be transferred within the system in the middle of a contractual period carried with them, owing to declared Board policy, the innuendo that they were guilty of incompetence, immorality or the conviction of a felony. However, these wrongdoings are grounds for termination of employment. Plaintiffs were not *terminated*, they were merely *transferred*. In addition, the language complained of in Counts VI and IX is not libelous under the innocent construction rule. Under this rule, language must be read as a whole and words given their natural and obvious meaning. Allegedly libelous words must be read innocently if possible and declared nonactionable as a matter of law. (*John v. Tribune Co.* (1962), 24 Ill.2d 437, 181 N.E.2d 105.) Stripped of innuendo, the statements complained of in Counts VI and IX merely recite that the chancellor agreed with the suggestion of an unofficial faculty group (which had, on its own initiative, investigated the problem) that plaintiffs be transferred because their teaching abilities would be more useful at a different campus. This is nonactionable as a matter of law, and Counts VI and IX were properly dismissed. Count XV of the Johnson complaint, to the extent that it sounds in libel, is a repetition of Count VI. We conclude that these counts do not sustain the alleged defamatory innuendo for the reason that a directive to a teacher, given during a semester, to discontinue meeting with his or her classes for the remainder of the semester, followed by a transfer effective as of the end of the semester, to another campus in the same system of junior colleges, does

not constitute a termination of the services of that teacher to the system. ■■ From this conclusion, it follows that Count XIII, which appears to pray for consequential damages as a result of breach of plaintiffs' contracts with the Board cannot stand. The mere fact that plaintiffs' classes were suspended and that plaintiffs were transferred cannot be said to give rise to irreparable injuries to plaintiffs' teaching skills. Neither can it be said to be a breach of contract.

■■ Count XIV of Johnson's complaint appears to allege an intentional infliction of mental distress. While such a cause of action is recognized in Illinois (*Knierim v. Izzo* (1961), 22 Ill.2d 73, 174 N.E.2d 157), the conduct complained of in this case falls far short of the outrageous conduct necessary to sustain a cause of action for intentional infliction of mental distress. We cannot say that the conduct complained of in this case was calculated to cause severe emotional distress to a person of ordinary sensibilities in the absence of special knowledge or notice. *Knierim v. Izzo* (1961), 22 Ill.2d 73, 174 N.E.2d 157; *Jamieson v. American National Safe Deposit Co.* (1971), 133 Ill.App.2d 647, 273 N.E.2d 741, *cert. denied*, 405 U.S. 990, 31 L.Ed.2d 457, 92 S.Ct. 1256.

Counts VII, VIII, X, XI and XII remain for our consideration. We first consider Counts XI and XII, which deal with alleged defamatory matter regarding the plaintiffs which was published in the Wilson College Press. Plaintiffs seek to hold defendants liable for these statements as publishers. The extent to which the first amendment protects the press from liability for allegedly defamatory statements is now governed by the recent case of *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 41 L.Ed.2d 789, 94 S.Ct. 2997. In *Gertz*, the supreme court set limits to the protection from defamatory suits afforded by the first amendment. A review of the supreme court's developing position in this area is in order.

■■ In the leading case of *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R. 2d 1412, the court held that the first amendment protects the press from liability for defamation of public officials absent a showing of actual malice. Actual malice for this purpose is knowledge of the falsity of the published statement or a reckless disregard for its truth or falsity. This rule was made applicable to public figures in *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 18 L.Ed.2d 1094, 87 S.Ct. 1975. Finally, in *Rosenbloom v. Metromedia, Inc.* (1971), 403 U.S. 29, 29 L.Ed.2d 296, 91 S.Ct. 1811, a plurality of the court held that the first amendment gave rise to this qualified privilege even in regard to defamatory statements regarding a private individual associated with a matter of general interest.

*Gertz* involved a libel suit against a publisher which printed an article by its associate editor regarding an attorney. This article charged the

attorney, who had been engaged in civil litigation arising out of a publicly controversial criminal case, with being a "communist-fronter" and a "Leninist" who had participated in "Marxist" and "Red" activities.

The United States Supreme Court held that, since public figures or public officials are inherently capable of publicly contradicting any lie or error, a constitutional qualified privilege based on the actual malice test of *New York Times Co. v. Sullivan* is appropriate for publications concerning them. On the other hand, States were held to have a legitimate interest in protecting private individuals under their laws of defamation. The court held that the States may define for themselves the appropriate standard of liability for a publisher or broadcaster who libels a private individual, so long as they do not impose liability without fault. It also held that only damages for actual injury could be recovered if the basis of liability is conduct short of knowledge of falsity or reckless disregard for the truth.

*Gertz* also teaches that the determination of whether one is a public figure is made by "looking to the nature and extent of an individual's participation in the controversy giving rise to the defamation." Here it is clear that Johnson and Novar had become actively engaged in the college controversy as to books to be used in their classes. While not public officials and not public figures for all purposes, plaintiffs clearly had become public figures within the Wilson College community, which was the community served by the publication. In *Basarich v. Rodeghero* (1974), 24 Ill.App.3d 889, 321 N.E.2d 739, the Appellate Court, Third District, held that public community high school teachers who were also athletic coaches were public figures in the municipal community served by the high school within the meaning of *New York Times Co. v. Sullivan*. The public community college teachers who are plaintiffs here are not distinguishable for this classification purpose.[1]

■■ By applying *New York Times Co. v. Sullivan*, the trial judge inferentially found, and we agree, that the complaint alleges no facts in support of the conclusion that the defendants published the statements

---

[1] We recognize that *Gertz* constitutes a pulling back to some extent from the holding in *Rosenbloom*, so as to allow the several States to determine for themselves within certain limitations the scope of protection which they see fit to extend to private individuals by means of their defamation laws. But that policy decision will also entail giving to the States some degree of flexibility in determining who is and who is not a private individual. We emphasize that we do not hold here that teachers in a public school are by that very fact public officials. Nor do we hold that teachers in a public school are by that very fact public figures either in the school community or in the local community served by the school. We simply hold that the plaintiffs here, as teachers in a public college, had, under the circumstances of this case, become public figures in the school community, which was the community served by the instant publication.

complained of in Counts XI and XII with actual malice. See *Turley v. W.T.A.X., Inc.* (1968), 94 Ill.App.2d 377, 236 N.E.2d 778; *Segall v. Lindsay-Schaub Newspapers, Inc.* (1966), 68 Ill.App.2d 209, 215 N.E.2d 295. The bare allegations of knowledge of falsity or of reckless disregard of truth or falsity of a statement, under these circumstances, is not legally sufficient. *Cf. Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill.2d 257, 239 N.E.2d 837.

Finally, we turn to Counts VII, VIII and X. We first note that nothing in the letter published by defendant Shabat, complained of in Count VIII, is in any way defamatory. The only potential basis of liability is the fact that it incorporated by reference the publications complained of in Count VII and Count X. Hence, we confine our analysis to the latter two Counts.

■■ Again applying the innocent construction rule of *John v. Tribune Co.*, we find that the published document complained of in Count VII simply states that the faculty group believed that plaintiffs had not abided by the spirit of the booklist agreement and that, under the circumstances, it would be best for them to be given a transfer to a different unit of the College System. We hold this expression of belief not to be defamatory as a matter of law.

■■ Count X stands in a somewhat different posture. Defendant Kalk's memorandum to the Wilson College faculty was in response to statements by plaintiffs which were quoted in the *Chicago Sun Times*. Kalk's memorandum merely refuted those statements. By no stretch of the imagination could Kalk's memorandum be construed to charge plaintiffs with dishonesty in general. Hence, the Kalk memorandum is not actionable. See *Wade v. Sterling Gazette Co.* (1965), 56 Ill.App.2d 101, 205 N.E.2d 44; *cf. Delis v. Sepsis* (1972), 9 Ill.App.3d 217, 292 N.E.2d 138.

Since neither Count VII nor Count X states a cause of action, it follows that Count VIII does not either.

Our decision renders it unnecessary for us to comment on other issues raised on this appeal.

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

DOWNING, P. J., and STAMOS, J., concur.