SIDNEY S. ALTMAN, Plaintiff-Appellant, v. AMOCO OIL COMPANY, Defendant-Appellee.
First District (4th Division)    No. 79-1288

Opinion filed May 29, 1980.

Sidney S. Altman, of Chicago, for appellant, *pro se.*

Kirkland & Ellis, of Chicago (Scott D. Early, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The plaintiff in this case filed an unsuccessful claim for libel after a creditor had turned a claim over to a collection agency and then caused him to have a bad debt or "09" credit rating, which was defined in part as "turned over for collection." The trial court applied the rule of innocent construction, and found that one permissible interpretation was truthful. It further held that an amended complaint failed to state a cause of action. We affirm.

The action was filed by Sidney Altman, an attorney, *pro se.*

According to the allegations in his complaint, Altman at one time had a credit card with the defendant Amoco Oil Company (Amoco). He discontinued it when he discovered someone was misusing it. He paid a part of the balance then due Amoco and offered to pay the remaining $400 balance existing at the time of the termination, but refused to pay the $29.22 interest which had accrued at the rate of 1.5 percent a month since the date of termination, claiming such rate was unauthorized once the account had been terminated. Amoco refused to accept the tender and turned the matter over to a collection agency which readily accepted the $400. This payment was made on July 26, 1973. In August 1974 Altman was refused a bank loan because of a bad credit rating which he later determined was due to a bad debt report by defendant and to a subsequent report that his liability on the aforementioned account was "charged off" and he was given an "09" credit rating. Altman alleged that as a result of the defendant's malicious interference in falsely reporting the plaintiff's financial responsibility and as a result of the publication and dissemination of the credit report, he was maliciously defamed and libeled in consequence of which he was financially embarrassed in his business.

The defendant in its answer set up the defense that any communication was true and privileged.

During the course of discovery Altman decided to take an evidentiary deposition of the president of the bank which had refused the loan. The notice of deposition he mailed to defendant's attorney listed the attorney's name but not the firm name. It was returned undeliverable for this reason after the deposition was taken. Plaintiff made no other attempt to give notice of the deposition to defendant. Upon defendant's motion, the trial court on September 20, 1976, suppressed the deposition without prejudice to its being retaken upon proper notice. Altman never did so.

Amoco thereafter moved for summary judgment based in part on its defense of truth. Evidence was introduced showing that an "09" rating was listed by the credit reporting company as "bad debt, placed for collection, suit, judgment, bankrupt, skip." There was also a "9B" rating which meant "Collection Account."

The trial court granted the defendant's motion for summary judgment with respect to truth and innocent construction, denied it as to other contentions and granted plaintiff 21 days to amend the complaint.

Plaintiff then amended his complaint to allege that on or about July 26, 1973, the date of payment, Amoco furnished information regarding plaintiff to various credit bureaus which was construed adversely to the plaintiff by a specified credit information bureau as evidenced by the bad debt report; that as a result of defendant's fraudulent concealment from

the credit agency that plaintiff had paid the account, plaintiff was maliciously defamed and libeled.

The court dismissed the whole action on May 14, 1979. The plaintiff then appealed from the order suppressing the deposition, the summary judgment and the final dismissal order.

## I.

We agree with the trial court that the defendant was entitled to judgment on the first complaint because under the rule of innocent construction the statement was reasonably susceptible of a truthful and thus nondefamatory construction.

■■ The principle of innocent construction has been established for over 100 years in Illinois courts. (See, for example, *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148; *Bougadis v. Langefeld* (1979), 69 Ill. App. 3d 1010, 387 N.E.2d 965; *LaGrange Press v. Citizen Publishing Co.* (1929), 252 Ill. App. 482, *appeal denied; Young v. Richardson* (1879), 4 Ill. App. 364.) Under this rule, allegedly defamatory words will be given an innocent construction if they are reasonably susceptible of such construction or if the allegedly defamatory matter is ambiguous (*Moricoli v. Schwartz* (1977), 46 Ill. App. 3d 481, 361 N.E.2d 74; *LaGrange Press v. Citizen Publishing Co.* (1929), 252 Ill. App. 482, *appeal denied*), even if such statements were made maliciously (*Conrad v. Logan* (1972), 4 Ill. App. 3d 981, 283 N.E.2d 54). In this case, the document showing the plaintiff to have an "09" rating also defined that rating as, in part, "placed for collection." Clearly since this definition is one contained in the allegedly defamatory document itself, it is a reasonable one and must be accepted by the court rather than a less innocent meaning such as "skipped town." Since we are required to interpret the "09" rating as meaning placed for collection, it is clear the defendant was entitled to judgment since that statement was truthful, and truth is a defense to a defamation action. *Delis v. Sepsis* (1972), 9 Ill. App. 3d 217, 292 N.E.2d 138, *appeal denied; Grabavoy v. Wilson* (1967), 87 Ill. App. 2d 193, 230 N.E.2d 581.

## II.

We also agree with the trial court that the amended complaint failed to state a cause of action.

■■ The plaintiff in his amended complaint merely alleged that defendant made certain unspecified disclosures to the credit reporting companies and that these companies, not the defendant, construed the information adversely to the plaintiff. According to the allegations, the credit companies, not the defendant, were responsible for the alleged

defamation. Moreover, the plaintiff has failed to allege in any way what disclosures the defendant is supposed to have made. There must be precision in a charge of libel (*Hambric v. Field Enterprises, Inc.* (1964), 46 Ill. App. 2d 355, 196 N.E.2d 489), and a complaint must clearly indicate the specific defamatory statement complained of. While the plaintiff in a later paragraph alleged that the defendant's failure to disclose payment caused injury, this adds nothing to the complaint since, absent allegation as to specifically what was communicated, it is impossible to know whether the communication, even considering the failure to disclose payment, could be considered defamatory.

This does not mean that a person may never be guilty of defamation in concealing the truth. Obviously, under certain circumstances a partial truth may be as defamatory as an outright lie. Nor are we holding that under no circumstances may the failure to correct false or outdated credit information constitute some kind of tort, other than defamation. As recognized in *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1973), 16 Ill. App. 3d 709, 306 N.E.2d 549, *aff'd in part, rev'd in part on other grounds* (1975), 61 Ill. 2d 129, 334 N.E.2d 160, a particular set of operative facts may create more than one cause of action, and defamatory statements which may in themselves give rise to a cause of action for libel or slander may also become the means by which a tort of interference with contractual relationships or prospective economic advantage is committed. But the plaintiff here only attempted to allege a cause of action in defamation and did not allege any duty on the part of the defendant to communicate knowledge of the payment of the claim to others, assuming that it even knew of the payment.

The plaintiff in oral argument indicated that the vagueness of the allegations in the amended complaint was caused by the defendant's failure to comply with certain discovery orders. Plaintiff's remedy, if this was true, was to seek redress pursuant to Supreme Court Rule 219. (Ill. Rev. Stat. 1977, ch. 110A, par. 219.) Furthermore, this point was not raised in plaintiff's initial brief on appeal and therefore is waived. Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7).

We do not, however, agree with the defendant's contention that the summary judgment acted as *res judicata* barring the contentions raised in the amended complaint. The summary judgment only determined some, not all, of the issues in the case and therefore did not constitute a final order. (*Kulins v. Malco, Inc.* (1979), 79 Ill. App. 3d 982, 398 N.E.2d 1144.) The doctrine of *res judicata* is only applicable when the first judgment is final *Murphy v. Urso* (1979), 83 Ill. App. 3d 779, 404 N.E.2d 287.

### III.

Finally, we hold that the trial court did not abuse its discretion in

striking the evidentiary deposition. An evidentiary deposition is a form of testimony, admissible at trial. Accordingly the defendant had a right to cross-examine the witness, a right which was denied him by the plaintiff's conduct. Plaintiff is a Chicago attorney, and, therefore, we must assume, familiar with the fact that many attorneys in Chicago practice in large law firms which consist of many partners and associates. It cannot be expected that all of the names of these partners and associates will be listed on the building directory or that mail addressed to the attorney only, not giving the firm name, will be delivered. When defense counsel filed his appearance he listed his firm name and gave its address. Accordingly, plaintiff cannot contend he was unaware counsel was a member of a firm and did not practice as a sole practitioner.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.