CAROLE HEYING, Plaintiff-Appellant, *v.* DR. JOHN J. SIMONAITIS *et al.*, Defendants-Appellees.

First District (1st Division)   Nos. 82—1954, 83—1265 cons.

Opinion filed June 29, 1984.

158

Rolland H. Stimson, Ltd., of Chicago (Rolland H. Stimson and John Heying, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Harold L. Jacobson, David J. Slawkowski, Hugh C. Griffin, and William D. Frazier, of counsel), for appellees Dr. John J. Simonaitis and Dr. Luis Cespedes.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith and George W. Spellmire, of counsel), for appellees Nancy Borngraber and Orvilla Pupp.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

The present consolidated appeals arise out of an action brought by plaintiff, Carole Heying, a nurse, against physicians John J. Simonaitis and Luis Cespedes and two other nurses, Nancy Borngraber and Orvilla Pupp, all of whom worked with plaintiff. Her complaint alleged intentional interference with prospective economic advantage, defamation and intentional infliction of emotional distress. The trial court dismissed plaintiff's third amended complaint against all four defendants for failure to state a cause of action. Plaintiff thereafter filed a motion seeking to vacate the order of dismissal against the two defendant physicians and for leave to file a fourth amended complaint as to them only. The trial court denied plaintiff's motion. Plaintiff appeals the denial of her motion pertaining to the physicians and the earlier order dismissing her third amended complaint as to the two nurses. We affirm in both instances.

The record reflects that in October 1978 plaintiff was employed as a nurse in the renal dialysis unit at Memorial Hospital in Du Page County in suburban Elmhurst. Defendant Drs. Simonaitis and Cespedes were staff physicians in the unit. Defendants Pupp and Borngraber were the head nurse and supervising nurse, respectively, in the unit. Plaintiff was employed by the hospital for nine years and assigned to the renal dialysis unit for approximately three years.

During the fall of 1978, there was growing discord between plaintiff and the rest of the renal dialysis unit staff. Plaintiff alleged that the problem stemmed from her criticism of certain training procedures being followed in the unit. Documents attached to the pleadings, however, disclosed there were various complaints both by patients and other staff members concerning plaintiff's "negative" attitude, her fa-

voritism to certain patients and her antagonism toward other staff members.

In accordance with the hospital's established grievance procedures, two meetings were held between plaintiff and Drs. Simonaitis and Cespedes. At the meetings, the problems and dissension in the unit were discussed, allegedly in a somewhat heated manner. Following these meetings, an anecdotal note was signed by nurses Pupp and Borngraber, itemizing some of the events and problems that led to the meetings.

The meetings between plaintiff and Drs. Simonaitis and Cespedes failed to produce a satisfactory resolution of the problem. Consequently, the matter was taken through the next step of the hospital grievance procedure—review by an impartial peer review committee composed of other nurses outside the renal dialysis unit. Both Drs. Simonaitis and Cespedes testified before the nurse's review committee. On December 4, 1978, the review committee recommended that the anecdotal note be removed from plaintiff's personnel file and that plaintiff be given an apology for the manner in which the meetings with Drs. Simonaitis and Cespedes were handled. In view of the personality conflicts involved, however, the review committee concluded that "in the best interest of all parties, the committee recommends that Mrs. Heying be reassigned to a nursing area that is mutually acceptable to her and the nursing office."

Following the review committee's recommendation, plaintiff made no attempt to carry the matter through any further review processes provided by hospital grievance procedures. She subsequently was reassigned to another nursing position in the hospital. At some point after her transfer, she voluntarily terminated her employment at the hospital. She currently is employed in an obstetrical/gynecological unit at another hospital.

After terminating her employment with the hospital, plaintiff brought suit against Drs. Simonaitis and Cespedes and nurses Pupp and Borngraber. Her third amended complaint contained three counts. Count I alleged intentional interference with prospective economic advantage. Count II charged defamation and count III alleged intentional infliction of emotional distress. On July 8, 1982, the trial court entered an order dismissing nurses Pupp and Borngraber from the case on the ground that plaintiff's third amended complaint failed to state a cause of action as against them. Plaintiff thereafter filed an appeal from the court's order under Docket No. 82—1954.

On December 16, 1982, the third amended complaint similarly was dismissed as to Drs. Simonaitis and Cespedes. Plaintiff filed a motion

to vacate this dismissal order and for leave to file a fourth amended complaint against the physicians. The fourth amended complaint was predicated on the same three theories as the third amended complaint. The trial court considered plaintiff's fourth amended complaint on the merits but ultimately concluded that it, too, failed to state a cause of action and denied plaintiff's motion. Plaintiff appealed the court's determination under Docket No. 83—1265.

In this consolidated appeal, we are to determine whether the trial court acted correctly in dismissing plaintiff's third amended complaint as to all four defendants and in denying her leave to file a fourth amended complaint against Drs. Simonaitis and Cespedes.

## I

■ Plaintiff initially urges that count I of her third and fourth amended complaints states a cause of action for tortious interference with prospective economic advantage. Count I alleges, in pertinent part, as follows: that "plaintiff had a reasonable expectation of continuing a valid business relationship" with Memorial Hospital of Du Page County; that defendants intentionally and maliciously conspired among themselves to interfere with plaintiff's employment at Memorial Hospital by making defamatory statements; and that as a proximate result of the defendants' actions, the plaintiff was transferred out of the renal dialysis unit and into another unit at Memorial Hospital.

The law is well settled that the following essential elements must be alleged to state a cause of action for tortious interference with prospective economic advantage: (1) the plaintiff's reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) an intentional interference by the defendant which prevents the expectancy from ripening into a valid business relationship; and (4) damage to the plaintiff from such interference. (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1973), 16 Ill. App. 3d 709, 713-14, 306 N.E.2d 549, *rev'd in part on other grounds* (1975), 61 Ill. 2d 129, 334 N.E.2d 160.) It is further established that the interference complained of must induce or cause a breach or termination of the relationship or expectancy. *City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 363, 300 N.E.2d 331.

Here, plaintiff has not advanced the requisite factual allegations in count I to support a cause of action based on interference with prospective economic advantage. Count I fails to allege that plaintiff's relationship with Memorial Hospital was breached or terminated as a result of defendants' conduct. Rather, plaintiff merely alleges that she was

transferred from one unit of the hospital to another. This court has made it clear that transfer is not the same as termination and cannot be said to be a breach of contract. *Johnson v. Board of Junior College District No. 508* (1975), 31 Ill. App. 3d 270, 274-75, 334 N.E.2d 442.

Plaintiff acknowledges that she was not terminated from Memorial Hospital when she alleges that she was "constructively terminated." Plaintiff has cited no cases in her brief which recognize or define the term "constructive termination." At oral argument, plaintiff relied on *Bryce v. Johnson & Johnson* (1983), 115 Ill. App. 3d 913, 450 N.E.2d 1235. *Bryce*, however, does not hold that a concept known as "constructive termination" exists in Illinois. Rather, the court in *Bryce* merely indicated in *dicta* that even if such a theory was allowed, its application would not be supported by the facts before it. Hence, we find plaintiff's reliance on *Bryce* to be misplaced.

■ We briefly note that count I additionally alleged that plaintiff no longer could expect to be employed in the renal dialysis unit of any hospital. This allegation, contrary to plaintiff's contention, fails to show that defendants interfered with her reasonable expectancy of entering into a prospective business relationship with a third party. To state a cause of action, plaintiff is required to allege that a contractual arrangement with an identifiable third party is at least contemplated. (*Parkway Bank & Trust Co. v. City of Darien* (1976), 43 Ill. App. 3d 400, 402-03, 357 N.E.2d 211.) Here, there is no allegation that plaintiff was contemplating such a contractual arrangement with another hospital or that she even was seeking employment at another hospital. Accordingly, we find no error by the trial court in dismissing count I for failure to state a cause of action for interference with prospective economic advantage.

## II

■ The next issue for our determination is whether count II of plaintiff's third and fourth amended complaints states a cause of action for defamation. Count II, labelled "Defamation of a Person in Her Profession," alleges that defendants entered into a conspiracy with ill-will and malice to defame and ruin the plaintiff and to deprive her of employment with Memorial Hospital of Du Page County and deprive her of future employment elsewhere in the renal dialysis field. Count II further alleges that defendants published defamatory statements they knew were false and that such statements were made with reckless disregard to their truth or falsity. The allegedly defamatory statements set forth in count II were supposedly made at hearings before the nurse's review committee. Plaintiff in count II also cites two comments

made by defendant Dr. Simonaitis following plaintiff's transfer from the renal dialysis unit.

Initially, we note that a complaint for defamation must clearly identify the specific defamatory statement complained of. Without an allegation of specifically what was communicated, it is impossible to know whether the communication gives rise to a cause of action for defamation. (*Altman v. Amoco Oil Co.* (1980), 85 Ill. App. 3d 104, 108, 406 N.E.2d 142.) Here, plaintiff in count II fails to identify any specific defamatory statements made by the defendant nurses Pupp and Borngraber. Although count II alleges that these two defendants made defamatory statements before the nurse's review committee, the statements which are quoted or described in count II were made by the defendant physicians rather than the nurses.

In recognition of the foregoing fact, plaintiff argues that the physicians' statements were made collectively by all defendants as conspirators. To allege a conspiracy, however, the complaint must set forth with particularity the facts and circumstances constituting the alleged conspiracy. (*Owens v. Green* (1948), 400 Ill. 380, 393, 81 N.E.2d 149; *Commercial Products Corp. v. Briegal* (1968), 101 Ill. App. 2d 156, 242 N.E.2d 317.) Here, count II merely alleges in a conclusional fashion that defendants "entered into a conspiracy." As such, the allegations in count II are insufficient to permit plaintiff to impose responsibility on the nurses for the statements of the physicians based on a conspiracy.

■ We further note that plaintiff on appeal cites the anecdotal record signed by nurses Pupp and Borngraber to support a defamation action in count II against these defendants. We find that count II, however, contains no allegation or reference to the anecdotal record. Although the anecdotal record is alleged in other counts and is attached to the third complaint, neither those allegations nor the anecdotal record are incorporated by reference in count II. Consequently, the anecdotal record cannot form a basis for sustaining count II against these two defendants.

■ Having determined above that count II fails to state a cause of action against the defendant nurses Pupp and Borngraber, we now consider the allegations in that count as they pertain to the defendant physicians. As previously noted, count II centers on certain testimony given by Drs. Simonaitis and Cespedes before the nurse's review committee. Plaintiff alleges the physicians' statements were libelous *per se.*

An action for defamation based on libel *per se* requires that the words used are in and of themselves so "obviously and inevitably hurtful" that proof of special damages is unnecessary. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 348, 243 N.E.2d 217.) Two of

the four categories of words which are actionable *per se* and thus do not require proof of special damages are those "imputing inability to perform or want of integrity in the discharge of duties of office or employment" and those "prejudicing a particular party in his profession or trade." (*Fried v. Jacobson* (1983), 99 Ill. 2d 24, 27, 457 N.E.2d 392.) To determine whether the particular language used constitutes libel *per se*, the "rule of innocent construction" must be applied. 99 Ill. 2d 24, 27, 457 N.E.2d 392.

The innocent construction rule, as most recently modified by our supreme court in *Chapski v. Copely Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195, 199, provides:

> "[A] written or oral statement *is to be considered in context*, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*." (Emphasis added.)

Whether an allegedly defamatory statement is protected by the innocent construction rule is properly a question of law to be resolved by the trial court in the first instance. *Chapski v. Copely Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195.

In the case at bar, the trial court determined as a matter of law that the statements before the nurse's review committee were non-actionable under the innocent construction rule. After reviewing the statements complained of within the context of the physicians' entire testimony before the nurse's review committee, we are in agreement with the trial court. The transcript of their testimony, attached as an exhibit to the third and fourth amended complaints, reveals that the defendant physicians were merely expressing that, given the close working relationship between nurses, doctors and patients in the renal dialysis unit, the personality conflicts involving plaintiff had developed to the extent where they were interfering with the work of the unit. At no time did either of the defendant physicians impugn plaintiff's ability as a nurse. Rather, they stated to the contrary:

> "DR. SIMONAITIS: Well I think Carole Heying is a good nurse. When she's giving a bath or she's attending to a patient I think she's a very good nurse."

> "DR. CESPEDES: She's a very good nurse. *** I was the first one to say to her now we're not criticizing your work. We know that she's a hard working, knowledgeable nurse, we have nothing to say about that Ok, this was not the point. It was the point that there was unrest among the staff."

We are of the conclusion that the defendant physicians' statements objected to by plaintiff in count II, when read in the context of their entire testimony before the review committee, are not libelous *per se* under the *Chapski* innocent construction rule. Additionally, we note that the two epithet and name-calling allegations in count II pertaining to times after plaintiff had been transferred from the renal dialysis unit do not impute want of integrity or capacity to plaintiff in her profession and are not libelous *per se*. See *McGuire v. Jankiewicz* (1972), 8 Ill. App. 3d 319, 320, 290 N.E.2d 675; *Skolnick v. Nudelman* (1968), 95 Ill. App. 2d 293, 305, 237 N.E.2d 804.

■ We briefly note that defendants Simonaitis and Cespedes assert that any libel action based upon their testimony before the nurse's review committee was barred by the qualified privilege rule. Given our discussion above, defendants need not rely on the protection afforded by a qualified privilege. Nevertheless, we find that such a privilege was justified by the facts before us. The elements for a qualified privilege are "[g]ood faith by the defendant, an interest or duty to be upheld, a statement limited in its scope to that purpose, a proper occasion, and publication in a proper manner and to proper parties only." (*Spencer v. Community Hospital of Evanston* (1980), 87 Ill. App. 3d 214, 219, 408 N.E.2d 981.) These elements are satisfied in this case. Plaintiff's mere conclusional allegation in count II that defendants acted "with ill-will and malice" is insufficient to show that defendants exceeded their privilege. 87 Ill. App. 3d 214, 220, 408 N.E.2d 981.

### III

■ The final issue presented for our review is whether count II of plaintiff's third and fourth amended complaints was properly dismissed for failure to state a cause of action for the intentional infliction of emotional distress. To state a cause of action for this tort, a plaintiff must allege facts establishing: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by plaintiff was severe; and (3) that defendant's conduct was such that defendant knew that severe emotional distress would be certain or substantially certain to result. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 89, 360 N.E.2d 765.) The "outrageous conduct" must extend beyond "mere insults, indignities, threats, annoyances, petty oppressions or trivialities"; the conduct must be so extreme in degree as to go beyond all possible bounds of decency. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 90, 360 N.E.2d 765; *Kelly v. Franco* (1979), 72 Ill. App. 3d 642, 648, 391 N.E.2d 54.) Additionally, the distress suffered must be such that no reasonable man could be expected to endure it.

*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 90, 360 N.E.2d 765.

The allegations in count III of plaintiff's third and fourth amended complaints fall far short of stating a cause of action based on the intentional infliction of emotional distress. The conduct about which plaintiff complains in count III is the preparation of the anecdotal note and certain statements made by the defendant physicians before the nurse's review committee. Essentially this conduct consisted of reporting observations of the effect of plaintiff's personality on the renal dialysis unit's operation. Count III additionally alleged that plaintiff was transferred from the renal dialysis unit. Clearly the conduct complained of is not so outrageous in degree as to extend beyond all possible bounds of human decency. Nor can we say that the conduct complained of was calculated to cause emotional distress so severe that no reasonable person could be expected to endure it.

Personality conflicts, questioning of job performance and job transfers, whether for disciplinary or management purposes, are unavoidable aspects of employment. Frequently, they produce concern and distress for the affected employee. Yet, if the distress from such incidents was deemed so severe that no reasonable person could be expected to endure it, nearly all employees would have a cause of action for intentional infliction of severe emotional distress. See *Johnson v. Board of Junior College District No. 508* (1975), 31 Ill. App. 3d 270, 275, 334 N.E.2d 442 (allegations that defendant school officials criticized the performance of two teachers and caused the transfer of those two teachers to another college within the district were held insufficient to cause severe emotional distress to a person of ordinary sensibilities).

■ Given plaintiff's failure to plead essential elements of her cause of action in count III, and our holdings above as to counts I and II, we conclude that the trial court acted properly in dismissing plaintiff's third amended complaint and denying her leave to file a fourth amended complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McGLOON and GOLDBERG, JJ., concur.