Harjit SINGH, Plaintiff,

v.

Arthur J. CURRY, Christine Curry, Sukhjit Gill, Barry H. Greenburg and Nathan's Deli, Inc., Defendants.

No. 86 C 8433.

United States District Court,
N.D. Illinois, E.D.

Aug. 17, 1987.

**604**

Donald L. Johnson, Johnson & Schwartz, Chicago, Ill., for plaintiff.

Edward A. Berman (Gill), Berman, Roberts & Kelly, Michael J. Rovell, Robert D. Nachman, Mark Dupont (Greenburg), Jenner & Block, Ira S. Miller (Nathan's Deli/Curry), Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Harjit Singh brings this action against defendants Arthur J. Curry, Christine Curry, Sukhjit Gill, Barry H. Greenburg and Nathan's Deli, Inc., alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (West Supp.1987), as well as various common law claims. Currently before the Court is defendants' motion to dismiss all counts for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). For the reasons noted, the motion is granted in part and denied in part.

### I.

### FACTS [1]

For this motion to dismiss, we consider only those facts alleged in the complaint and not any additional facts the parties allege in their briefs.[2] The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. As such, we take the facts alleged in the complaint as true, even though the facts are not necessarily true. Should it develop that the facts alleged in the complaint are not well grounded in fact, then defendants may be entitled to attorneys' fees under Fed.R.Civ.P. 11. For now, however, we assume the truth of the allegations. Therefore, we will ignore the various affidavits, letters and other evidence defendants have submitted in their brief, and we will consider only the facts alleged in the complaint.

On May 5, 1986, Singh and defendant Arthur J. Curry entered into a written contract ("the May 5 Agreement"). The May 5th Agreement provides for the transfer of ownership of two restaurants owned by Singh, de brucio's and the Wells Street Journal, to Arthur J. Curry and Curry Development & Investments, Inc. along with certain personal liabilities of Singh. Shortly after Singh and Curry entered into the May 5th Agreement, Curry repudiated the May 5th Agreement and Singh never realized his expectancy in it.

During this period, and many years prior, defendant Barry Greenburg was Singh's attorney. Shortly after the May 5th Agreement, Greenburg became a shareholder in a new company named Nathan's Deli, Inc. Greenburg advised Singh to agree to defendant Curry's repudiation of the May 5th Agreement and advised Singh to enter into a subsequent contract to sell Singh's company to Nathan's Deli, the company Greenburg had recently become a shareholder in. This new contract was far less favorable to Singh than the May 5th Agreement.

---

1. For purposes of a motion to dismiss for failure to state a claim, the Court takes all the well-pleaded allegations of the complaint as true and views them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Furthermore, the motion to dismiss should only be granted if it appears beyond a doubt that plaintiff can prove no set of facts which would entitle him or her to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

2. We have the option under Fed.R.Civ.P. 12(b) to convert this motion to a motion for summary judgment. However, in light of the fact that discovery in this case was stayed on February 25, 1987, there is no justification for doing so.

## II.

### MOTION TO DISMISS

Defendants raise a number of issues which they contend require us to dismiss Singh's complaint in its entirety. The defendants' principal contention in their memorandum in support of their motion is that we must dismiss Singh's first three counts under the doctrine of collateral estoppel because Nathan's Deli obtained a default judgment against Singh which declared that "the agreements between Harjit Singh and Nathan's Deli, Inc. dated May 5, 1986, May 15, 1986 and May 23, 1986 are a nullity...." Regardless of the fact that the May 5th Agreement Singh relies upon in his complaint is between Singh and "Curry Development & Investments, Inc. and Arthur J. Curry" and not Nathan's Deli, Inc., we find, as discussed below, that Singh has stated a claim upon which relief can be granted under his first three counts even assuming the invalidity of the May 5th Agreement.[3] Accordingly, because we find, as discussed below, that the validity of the May 5th Agreement is irrelevant to this motion to dismiss, we need not reach the issue of whether a default judgment has collateral estoppel effect under Illinois law. We note, however, that the general rule is that default judgments are not entitled to collateral estoppel effect.[4] *Grip-Pak, Inc. v. Illinois Tool Works*, 694 F.2d 466, 469 (7th Cir.1982) ("default judgment is not a proper basis for collateral estop-

pel"), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983); *Housing Authority for LaSalle v. YMCA of Ottowa*, 101 Ill.2d 246, 254, 78 Ill.Dec. 125, 129, 461 N.E.2d 959, 963 (1984).

In addition to its claim that Singh's Counts I through III are barred by collateral estoppel, defendants raise one other issue as to why Counts I through III fail to state a claim upon which relief can be granted. They contend that because Singh failed to allege that all conditions precedent to his May 5th Agreement had been fulfilled, that we must dismiss Counts I through III. Perhaps if these counts were for breach of the May 5th Agreement, then there may be some merit to defendants' position. A simple reading of these counts, however, reveals that Counts I through III are not for breach of contract. Although not labelled, the counts appear to be for tortious interference with prospective economic advantage, breach of fiduciary duty and civil conspiracy to commit a breach of fiduciary duty.[5] None of these causes of action requires that Singh allege that he has fulfilled the conditions precedent to the May 5th Agreement or that the contract be valid. Thus, the fact that Singh has failed to allege fulfillment of all conditions precedent or that the May 5th Agreement was allegedly declared a "nullity" by a state court default judgment is irrelevant to this motion to dismiss, so long as the complaint

3. Singh raised this obvious incongruity concerning the contracting parties' names in his response to defendants' motion to supplement the record. Defendants' reply was not to cite any legal authority that would allow this Court to give collateral estoppel effect to a default judgment that on its face does not refer to the agreement at issue. Instead, defendants merely asserted: "This new argument demonstrates that Singh is willing to say anything if it is convenient to his cause at the moment." This, however, does not help this Court decide the legal issue of the applicability of the state court default judgment to the May 5th Agreement between Singh and Curry. Curry was not even a party to the state court judgment. If defendants seek to use the state court default judgment for any purpose in this lawsuit, they will first have to give this Court a legal argument for the collateral estoppel use of the default judgment, not mere rhetoric.

4. "[T]he preponderant view, and we think the better one, is that, as a general proposition, a default judgment has no collateral estoppel effect. To invoke the doctrine of collateral estoppel in default cases is not only an oppressive application of the doctrine, but it misconceives the nature of a default judgment." 1B J. Moore, J. Lucas and T. Currier, *Moore's Federal Practice* ¶ 0.444(2) at 798 (1984).

5. The parties in this diversity action assume that Illinois substantive law applies to the state law claims. We will assume for purposes of this motion to dismiss that Illinois law applies to the non-federal claims because, according to the complaint, Illinois is the only state with contacts to this litigation.

states a cause of action that doesn't require a valid contract.

### A.

■ The elements that must be alleged to state a cause of action for tortious interference with prospective economic advantage are: (1) the plaintiff's reasonable expectancy of entering into a valid business relationship; (2) the defendants' knowledge of the expectancy; (3) an intentional interference by the defendant which prevents the expectancy from ripening into a valid business relationship; [6] and (4) damage to the plaintiff from such interference. *Heying v. Simonaitis*, 126 Ill.App.3d 157, 161, 81 Ill.Dec. 335, 338–39, 466 N.E.2d 1137, 1140–41 (1st Dist.1984); *National Loss Control Service Corp. v. Dotti*, 126 Ill. App.3d 804, 808, 81 Ill.Dec. 815, 819, 467 N.E.2d 937, 940 (1st Dist.1984). There is no requirement that plaintiff allege the existence of a valid contract. A liberal construction of the complaint reveals that Singh has alleged the elements necessary to state a claim upon which relief can be granted for tortious interference of prospective economic advantage, at least with respect to the individual defendants other than Arthur J. Curry. Regardless of whether the May 5th Agreement is now legally enforceable, we find that it at least qualifies as a "reasonable expectancy of entering into a valid business relationship." A reasonable inference to be drawn from Singh's allegation that the defendants "agreed and conspired among themselves to cause and to induce the repudiation of [the May 5th Agreement] by defendant Curry and Curry Development and Investments, thereby intentionally interfering with and destroying the reasonably expect-

ed benefits of plaintiff in the performance of [the May 5th Agreement]," is that the defendants had knowledge of Singh's expectancy in the May 5th Agreement, and by inducing the repudiation of the May 5th Agreement by Curry and Curry Development and Investments, defendants prevented Singh from realizing his expectancy in the May 5th Agreement.[7]

■ Singh, however, cannot bring this count against Arthur J. Curry. The prospective business relationship in this case is between Singh and Curry—but in an action for tortious inference with a prospective economic advantage, the plaintiff must establish the existence of a separate and independent business relationship with a third party. *F.E.L. Publications v. Catholic Bishop of Chicago*, 754 F.2d 216, 221 (7th Cir.), *cert. dismissed*, 473 U.S. 923, 106 S.Ct. 11, 87 L.Ed.2d 674, *cert. denied*, 474 U.S. 824, 106 S.Ct. 79, 88 L.Ed.2d 64 (1985). Generally, a party cannot be liable in tort for interfering with its own contract or business relationship. *Id.* Accordingly, the motion to dismiss Count I is granted only as to defendant Curry, but is denied as to the other defendants.

### B.

■ We find that Count II also states a claim upon which relief can be granted as to defendant Greenburg for breach of fiduciary duty. Singh alleges in Count II that Greenburg had been his attorney for many years and that shortly after May 5, 1986, Greenburg became a shareholder in Nathan's Deli, Inc., which put Greenburg in an adversary position to Singh. Singh further alleges that, despite this position, Greenburg advised Singh to agree to defendant Curry's repudiation of the May 5th

---

6. This is sometimes stated as follows: Intentional interference inducing or causing a breach or termination of the relationship or expectancy. *McIntosh v. Magna Systems, Inc.*, 539 F.Supp. 1185, 1192 (N.D.Ill.1982); *Galinski v. Kessler*, 134 Ill.App.3d 602, 89 Ill.Dec. 433, 480 N.E.2d 1176 (1st Dist.1985).

7. Although we have determined that Singh need not allege a valid contract in order to state a cause of action for tortious interference of prospective economic advantage, defendants' allegation of failure of condition may be relevant

on the issue of causation. *Heying v. Simonaitis*, 126 Ill.App.3d 157, 81 Ill.Dec. 335, 339, 466 N.E.2d 1137, 1141 (1st Dist.1984) ("[T]he interference complained of must induce or cause breach or termination of the relationship or expectancy"). If the reason Singh was unable to realize his expectancy was the failure of condition and not the conspiracy, then defendants may prevail on the merits. This, however, is a motion to dismiss, and we may only consider the allegations of the complaint.

Agreement and to enter into a subsequent contract which was more favorable to Greenburg's company Nathan's Deli than to Singh.

Defendants seek to have us dismiss this count on the merits by claiming that Greenburg disclosed his interest to Singh and advised him to seek other counsel. Regardless of whether this would be an adequate defense to a breach of fiduciary duty claim, this is a motion to dismiss for failure to state a claim upon which relief can be granted. As such, we look only at the allegations of the complaint to see if plaintiff has stated a cause of action. A review of the allegations in Count II shows that Singh has indeed set out the elements of a cause of action for breach of fiduciary duty. It is elementary that the relationship of attorney and client is as a matter of law a fiduciary relationship. *See, e.g., Vrooman v. Hawbaker,* 387 Ill. 428, 434, 56 N.E.2d 623, 626 (1944). "Where this relation of attorney and client exists and the attorney receives anything of benefit thereby, either by purchase from the client or by *acquiring interests contrary to the interests of his client,* the burden of proof rests upon the attorney to show the fairness of the transaction, that it was equitable and just, that it did not proceed from undue influence, and that the property so acquired does not belong constructively to the client." *Id.* at 435, 56 N.E.2d at 626. When one in a fiduciary relationship deals with the subject matter of the relationship and thereby gains an advantage to himself, he will be deemed guilty of fraud. *Id.* Accordingly, Greenburg's motion to dismiss Count II is denied.

### C.

■ We find that Count III also adequately states a claim upon which relief can be granted and that is for civil conspiracy to commit a breach of fiduciary duty. A civil conspiracy giving rise to a cause of action in Illinois involves a combination of two or more persons for the purpose of accomplishing through concerted action, either an illegal object or a legal object by an illegal means. *Dymek v. Nyquist,* 128 Ill. App.3d 859, 866, 83 Ill.Dec. 52, 58, 469

N.E.2d 659, 665 (1st Dist.1984) (citing *Daley v. G'Sell,* 102 Ill.App.3d 548, 58 Ill.Dec. 524, 430 N.E.2d 556 (1st Dist.1981); *Bau v. Sobut,* 50 Ill.App.3d 732, 8 Ill.Dec. 486, 365 N.E.2d 724 (1st Dist.1977)). In Count III, Singh alleges that the defendants "agreed and conspired among themselves to cause Barry H. Greenburg, in breach of his duties of loyalty and fair dealing owed to plaintiff, to advise and to influence plaintiff to enter into the subsequent agreement which favored the conspirator's corporation at plaintiff's expense." (Complaint ¶ 13). This adequately alleges a civil conspiracy to breach Greenburg's fiduciary duties to Singh. Accordingly, the defendants' motion to dismiss Count III is denied.

### D.

■ Defendants characterize Singh's Count IV against defendant Sukhjit Gill as an action for breach of fiduciary duty. This characterization, however, ignores the allegations in Count IV. Singh alleges that defendant Gill was a secured creditor of plaintiff and as such owed to Singh a duty of "honesty in fact and fair dealing in transactions regarding his secured position." (Complaint ¶ 9). Singh further alleges that Gill threatened to enforce his secured interest in order to further a conspiracy to wrongfully obtain control of Singh's business. Ill.Rev.Stat. ch. 26, ¶ 1–203 (1985) imposes upon every contract under the Uniform Commercial Code an obligation of good faith in its performance or enforcement. This includes secured transactions under Article 9 of the UCC. Good faith in this transaction, a non-sales contract, means "honesty in fact with respect to the transaction in question." Ill. Rev.Stat. ch. 26, ¶ 1–201(19) (1985). The exercise of a secured creditor's rights as part of a fraudulent scheme against debtor may violate its duty of good faith under the UCC. *United States v. Cain,* 736 F.2d 1195, 1198 (7th Cir.1984). This, however, does not mean Singh would have an independent cause of action against Gill, but rather, that Singh could sue Gill for breach of the security agreement. To do so, however, Singh must make the same allega-

tions as are necessary to state a claim for breach of contract. *See generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1235 (1969) (setting forth the necessary allegations). Thus, to the extent Singh has failed to allege the proper prerequisites for a breach of contract claim, we dismiss Count IV.

### E.

■ Defendants also move this Court to dismiss Singh's Count V under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (West Supp.1987), for failure to state a claim upon which relief can be granted. Defendants raise four issues in support of their motion to dismiss Singh's RICO count. Because we find that Singh has failed to adequately allege the existence of a "pattern of racketeering activity" necessary to state a claim under RICO, we need not address the defendants' other grounds.

Section 1964 of RICO enables a private plaintiff to bring a civil suit based on a violation of § 1962. A key element of a § 1962 claim, however, is the existence of a pattern of racketeering. *See Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 818 (7th Cir.1987); *Marks v. Forster*, 811 F.2d 1108, 1110 (7th Cir.1987); *Elliott v. Chicago Motor Club Insurance*, 809 F.2d 347, 349 (7th Cir.1986); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 974 (7th Cir. 1986); *Lipin Enterprises, Inc. v. Lee*, 803 F.2d 322, 323 (7th Cir.1986).

In *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986), the Seventh Circuit held that in "order to be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, *i.e.*, 'transactions "somewhat separated in time and place." ' " *Id.* (citations omitted). The court noted that the relevant factors to consider were (1) the number and variety of predicate acts; (2) the length of time over which they were committed; (3) the number of victims; (4) the presence of separate schemes; and (5) the occurrence of distinct injuries. *Id.*

The Seventh Circuit in subsequent cases has applied the pattern requirement along these guidelines. In *Skycom*, 813 F.2d at 818, the court held that supposedly fraudulent representations leading up to a single contract, and the transfer of a single business opportunity did not amount to a "pattern" of racketeering. In *Marks*, the court found that, despite the allegation of multiple acts of mail fraud and multiple misrepresentations, the racketeering activity was designed to defraud one victim on one occasion and, therefore, did not amount to a pattern. *Marks*, 811 F.2d at 1111. In *Elliott*, the court held that multiple predicate acts of mail fraud which all related to the plaintiffs' attempt to settle one claim under their uninsured motorist insurance policy did not amount to a pattern. *Elliott*, 809 F.2d at 350. In *Lipin*, the court held that numerous misrepresentations made by mail all designed to defraud one victim on one occasion, the sale of a company, did not amount to a pattern. *Lipin*, 803 F.2d at 324.

With these guidelines in mind, we turn to the allegations of Singh's RICO claim. Singh alleges that the scheme involved was "a scheme to defraud plaintiff from the benefit of [the May 5th Agreement]." In furtherance of this scheme, Singh alleges defendants committed six predicate acts of mailings. We find this insufficient to allege a "pattern" of racketeering. Here all six of the mailings were part of one scheme which was intended to deprive one victim, Singh, of the benefits of one contract, the May 5th Agreement. Although there were a number of mailings spread over a six month period, each of the mailings as predicate acts lacked "independent harmful significance." *Ghouth v. Conticommodity Services, Inc.*, 642 F.Supp. 1325, 1337 (N.D. Ill.1986), sufficient to constitute "distinct injuries" under *Morgan*. The harm from each act was cumulative and not independent.[8] Accordingly, the allegations in

---

8. This is not to imply that the required harm in the "independent harmful significance" harm

Singh personally, *see Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806 (7th Cir.1987), rather, the

Singh's Count V fail to state a claim upon which relief can be granted under RICO. Therefore, we grant defendants' motion to dismiss Count V.

## II.

### *Motion for Rule 11 Sanctions*

This motion is premature. Should it develop that Singh and his attorneys have violated Rule 11 by filing a complaint "not well grounded in fact," then we will not hesitate to assess sanctions, including reasonable attorneys' fees incurred in defending this action. While we sympathize with defendants who believe they are the subject of a frivolous lawsuit and want a quick resolution, the answer is not to move to dismiss and stay discovery, and at the same time have this Court examine matters extraneous to the complaint to justify the dismissal which plaintiff has no way to rebut because of the discovery stay. Rather, defendants should move for summary judgment after completion of discovery.

## CONCLUSION

In summary, we deny defendants' motion to dismiss Counts I through III, except that we grant the motion to dismiss Count II for tortious interference with prospective economic advantage as to defendant Arthur J. Curry. We grant defendant Sukhjit Gill's motion to dismiss Count IV. We also grant defendants' motion to dismiss Count V under RICO for failure to allege a pattern of racketeering. Finally, because we find defendants' motion for sanctions under Fed. R.Civ.P. premature, we deny it without prejudice. It is so ordered.

predicate acts must create distinct injuries to someone in order to qualify as a pattern.